COMMONWEALTH of Pennsylvania, Appellee

v.

Devon KNOX, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 16, 2011.

Filed July 16, 2012.

Reargument Denied Sept. 19, 2012.

Jeffrey M. Murray, Public Defender and Suzanne M. Swan, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney and Francesco L. Nepa, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Bradley S. Bridge, Public Defender, Philadelphia, amicus curiae.

BEFORE: BOWES, DONOHUE and SHOGAN, JJ.

OPINION BY SHOGAN, J.:

■ Appellant, Devon Knox, appeals from the judgment of sentence of mandatory life imprisonment without the possibility of parole entered following his convictions of second-degree murder, attempted robbery of a motor vehicle, and related crimes. Appellant and his co-defendant, his identical twin brother Jovon Knox, were seventeen years old at the time of the crimes.[1] Appellant challenges, *inter alia*, the constitutionality of a sentence of life imprisonment without the possibility of parole for a juvenile convicted of second-degree murder.[2] Pursuant to the United States Supreme Court's recent decision in *Miller v. Alabama*, 567 U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), we vacate the judg-

---

1. The twins were eighteen years old at the time of trial. Appellant's twin brother, Jovon Knox, also took a direct appeal, which was assigned to another panel of this Court at docket number 599 WDA 2009.

2. Appellant has challenged the legality of his sentence under the United States Constitution, with only a passing reference to the ban on cruel and unusual punishment under Article 1, Section 13 of the Pennsylvania Constitution. *See* Appellant's Brief at 50. We observe that the Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted." The Eighth Amendment's cruel and unusual punishments clause prohibits sentences which are wholly and irrationally disproportionate to the crime. *Commonwealth v. Oree*, 911 A.2d 169, 173 (Pa.Super.2006), *appeal denied*, 591 Pa. 699,

918 A.2d 744 (2007). Article 1, Section 13 of the Pennsylvania Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." The Pennsylvania prohibition against cruel punishment is coextensive with the Eighth and Fourteenth Amendments of the United States Constitution. *Commonwealth v. Cottam*, 420 Pa.Super. 311, 616 A.2d 988, 1003 (1992), *appeal denied*, 535 Pa. 673, 636 A.2d 632 (1993). Therefore, we note the Pennsylvania Constitution affords no broader protection against excessive sentences than that provided by the Eighth Amendment to the United States Constitution. *Commonwealth v. Pendola*, 416 Pa.Super. 568, 611 A.2d 761, 764 n. 2 (1992), *appeal denied*, 535 Pa. 617, 629 A.2d 1378 (1993) (citing *Commonwealth v. Spells*, 417 Pa.Super. 233, 612 A.2d 458, 461 (1992)).

ment of sentence and remand for the limited purpose of resentencing. In all other respects, we affirm.

In this murder case, the victim, eighteen-year-old Jehru Donaldson, was sitting alone in the driver's seat of his parked vehicle outside his girlfriend's sister's home in the North Side area of Pittsburgh. The victim was waiting to take his girlfriend and her two nephews to the Pittsburgh Pirates baseball game. Two other nephews, Aa.C. (age 13) and Ah.C. (age 9), were sitting on the front porch of their house and watched Appellant and his twin brother approach the parked vehicle. One of the twins told the victim to get out of the car and pulled out a gun. The victim drove away, and both twins ran after him. The twin with the gun shot at the car and struck the victim in the head, causing the car to crash. The victim died from the gunshot wound. Ah.C. was familiar with Appellant, having seen him in the neighborhood. The nephews described Appellant and his twin for the police as the perpetrators. The nephews also identified Appellant from a photo array as the twin who shot the victim. United States Marshals secured a warrant for the twins and arrested them. After Appellant's father refused to go to the police station, Appellant waived his *Miranda*[3] rights and gave a statement.

Appellant was charged with homicide,[4] attempted robbery of a motor vehicle,[5] conspiracy-robbery of a motor vehicle,[6] and possession of a firearm without a license.[7] At the preliminary hearing, Ah.C. again identified Appellant as the shooter. Appellant's motion to suppress his statement to police was subsequently denied, and Appellant and his twin brother were jointly tried by a jury. At trial, Ah.C. initially identified Appellant's twin as the shooter. Later during direct examination, however, Ah.C. identified Appellant as the shooter. At trial, Aa.C. initially said that he could not pick out the twin who had the gun. Later, though, Aa.C. testified that the lighter skinned twin had the gun, and he identified Appellant as the one with lighter skin. During closing argument, the prosecutor argued that the facts and identification evidence presented by the eyewitnesses established Appellant was the shooter. However, he also noted that under theories of accomplice liability and conspiracy, it was irrelevant which twin was the actual shooter because both of the twins were equally responsible for the victim's death for purposes of second-degree murder. The prosecutor reasoned that, although the identification testimony was consistent, "[i]t would not have mattered if [the eyewitnesses] could not identify who the shooter was." N.T., 6/3, 4, 9/08, at 435.

Appellant was found not guilty of first-degree murder but guilty of second-degree murder, attempted robbery of a motor vehicle, and the remaining offenses. His twin brother received the same verdict. On September 23, 2008, the trial court sentenced Appellant, as well as his twin brother, to a mandatory sentence of life

---

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. 18 Pa.C.S.A. § 2501(a).

5. 18 Pa.C.S.A. § 901(a). The trial court instructed the jury as to the offense of "criminal attempt, for purposes of this case the crime of robbery of a motor vehicle." N.T., 6/3, 4, 9/08, at 457. The jury returned a guilty verdict on the offense of "criminal attempt of

robbery of a motor vehicle." *Id.* at 477. Accordingly, we conclude that the trial court's reference to "Criminal Attempt (Homicide)" in its opinion was a typographical error. *See* Trial Court Opinion, 9/14/09, at 1.

6. 18 Pa.C.S.A. § 903(a)(1).

7. 18 Pa.C.S.A. § 6106(a)(1).

imprisonment without parole for the second-degree murder charge, with no further penalty on the other counts.[8] Appellant filed post-sentence motions, raising a challenge to the weight of the evidence. Appellant later filed another post-sentence motion raising a claim of ineffective assistance of counsel. A hearing was commenced, but the post-sentence motions were denied by operation of law. This appeal followed.

Appellant presents the following issues for our review:

I. The verdict was against the weight of the evidence, where [Appellant] was identified as the non-shooter by a Commonwealth eye-witness, and the non-shooter's conduct did not establish concert of action or an agreement to rob the victim, and that the jury found otherwise should shock the [conscience] of the court.

II. The imposition of a life sentence without the possibility of parole on a juvenile convicted of homicide by means of the felony murder rule and related doctrines violates the 8th Amendment ban on cruel and unusual punishment.

III. The trial court abused its discretion in denying the motion to suppress [Appellant's] statement made to police the day after the shooting, because the Commonwealth failed to meet its burden to show that [Appellant] knowingly, vol-untarily, and intelligently waived his *Miranda* rights, where despite the fact he was a juvenile at the time, he was not given an opportunity to consult with an interested adult.

IV. This honorable court should remand for continuation of the ineffectiveness hearing, or find that the claim has not been previously litigated for purposes of any subsequent collateral challenge, because the trial court ended the ineffectiveness hearing before the testimony of trial counsel could be heard, where the trial court claimed that it lacked jurisdiction to continue.

Appellant's Brief at 4.

Appellant first argues that the verdict of guilt was against the weight of the evidence. Specifically, Appellant contends that there was no evidence to establish which twin shot the gun, or that the twins were acting in concert or in agreement with respect to either the robbery or the homicide. Appellant insists that he was identified in court as the non-shooter and that any evidence to the contrary was tenuous and vague.

■ We use the following standard of review in addressing a weight of the evidence claim:

Our scope of review for such a claim is very narrow. The determination of whether to grant a new trial because the

---

8. Under the present statute, when a juvenile is tried as an adult and convicted of second-degree murder in Pennsylvania, there is no discretion in sentencing. 18 Pa.C.S.A. § 1102(b) mandates that a person who has been convicted of second-degree murder shall be sentenced to a term of life imprisonment. Pursuant to the Prisons and Parole Code, the Pennsylvania Board of Probation and Parole is specifically prohibited from paroling an inmate condemned to death or serving a sentence of life imprisonment. 61 Pa.C.S.A. § 6137(a)(1) (formerly codified at 61 P.S. § 331.21). *See also Castle v. Commonwealth,* *Pennsylvania Board of Probation & Parole,* 123 Pa.Cmwlth. 570, 554 A.2d 625, 628–629 (Pa.Cmwlth.1989), *appeal denied,* 523 Pa. 650, 567 A.2d 653 (1989) (finding no merit to the appellant's claim that he is entitled to parole even though he is serving a life sentence for his conviction of second-degree murder pursuant to 18 Pa.C.S.A. § 1102(b)). In the case of a homicide inflicted by a firearm, this sentence is imposed regardless of whether the defendant was the shooter, an accomplice, or a co-conspirator. Furthermore, this is the same sentence imposed upon a juvenile convicted of first-degree murder.

verdict is against the weight of the evidence rests within the discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record. A claim that the evidence presented at trial was contradictory and unable to support the verdict requires the grant of a new trial only when the verdict is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Young*, 692 A.2d 1112, 1114–1115 (Pa.Super.1997) (citations omitted).

It must be emphasized that it is not for this Court or any appellate court to view the evidence as if it was the jury. Our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience.

*Commonwealth v. Griffin*, 453 Pa.Super. 657, 684 A.2d 589, 597 (1996). Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. *Commonwealth v. Widmer*, 560 Pa. 308, 321, 744 A.2d 745, 753 (2000).

In addressing Appellant's challenge to the weight of the evidence, the trial court made the following observation regarding the facts established by the evidence:

Contrary to [Appellant's] version of the facts, the evidence presented at trial established that [Appellant] acted in concert with his brother in the robbery of Jehru Donaldson's car. [Appellant] purposefully approached the car with his brother and pulled out a gun, while his brother blocked the door of the car so Jehru could not escape. Once [Appellant] fired the gun, he and his brother fled and hid, and both subsequently lied to the police regarding their whereabouts at the time of the shooting. There is nothing about the verdicts in this case that shock the conscience or demand the award of a new trial. Rather, to the contrary, the verdicts comport with the evidence presented at trial, namely that [Appellant] and his brother acted in concert to rob Jehru Donaldson of his car and Jehru Donaldson was killed in the commission of that robbery. This Court was well within its discretion when it allowed [Appellant's] weight of the evidence claim to be denied by operation of law. As such, this claim must fail.

Trial Court Opinion, 9/14/09, at 3–4.

■ Correspondingly, our review of the record reflects ample evidence upon which the jury could rely to substantiate which twin possessed the gun during the incident. Indeed, there were two eyewitnesses to the event and both identified, from photo arrays shown on the day of the murder, Appellant as the twin who held the gun. N.T., 6/3, 4, 9/08, at 185, 314–315, 321, 363. Ah.C. also identified Appellant as the shooter during the preliminary hearing. *Id.* at 363. In addition, both eyewitnesses confirmed during trial that they observed Appellant, the lighter skinned of the twins, as the twin who held and shot the gun.[9] *Id.* at 158–159, 300–301.

9. This testimony was offered by Ah.C. in spite of the deceptive event apparently concocted

by the defense in order to confuse the preteen eyewitness during trial. The trial court

■ Furthermore, even if the jury did not specifically find that Appellant was the shooter,[10] the record certainly reflects that the twins acted in concert and had agreed to rob the victim, and that both were thus liable for second-degree murder.

"A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(b). The "perpetration of a felony" is defined as: "The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." 18 Pa.C.S.A. § 2502(d).

■ The Crimes Code defines an accomplice as follows:

A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

18 Pa.C.S.A. § 306(c)(1), (2). "Both requirements may be established wholly by circumstantial evidence. Only 'the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice.' No agreement is required, only aid." *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1251 (Pa.Super.2005) (citations omitted).

To establish complicity, mere presence at the scene of a crime and knowledge of the commission of criminal acts is not sufficient. Nor is flight from the scene of a crime, without more, enough. However, those factors combined, along with other direct or circumstantial evidence may provide a sufficient basis for a conviction, provided the conviction is predicated upon more than mere suspicion or conjecture.

*Commonwealth v. Rosetti*, 322 Pa.Super. 536, 469 A.2d 1121, 1123 (1983) (citations omitted).

The Pennsylvania Crimes Code defines conspiracy as follows:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

explained the incident, which came to light during Ah.C.'s testimony, as follows:

[B]oth attorneys participated in a courtroom stunt reminiscent of "The Parent Trap" in which the brothers—who had dressed identically for trial—switched places at counsel table, and which, when discovered, required this Court to adjourn the trial, have them re-fingerprinted and re-braceleted, celled and transported separately, and each assigned their own personal Sheriff's Deputy to ensure their identities were not scrambled once again.

Trial Court Opinion, 9/14/09, at 2–3. The record reflects that Ah.C. was initially confused when making identifications, but later identified Appellant as the twin who possessed the firearm. N.T., 6/3, 4, 9/08, at 154–157, 159.

10. Given the Commonwealth's statement during closing argument that it was irrelevant which twin was the actual shooter, we cannot definitively conclude that the jury found Appellant to be the shooter by virtue of its verdict. As the record reflects, the jury was not given a special interrogatory on the verdict slip to make a determination of who was the actual shooter. *See* Verdict Slip, Docket Entry No. 9.

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a)(1), (2). This Court has stated,

[T]o sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by the defendant; it need only be committed by a co-conspirator.

*Commonwealth v. Murphy*, 795 A.2d 1025, 1037–38 (Pa.Super.2002) (citations and internal quotation marks omitted).

The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation.

*Commonwealth v. Johnson*, 719 A.2d 778, 784–785 (Pa.Super.1998) (citations and internal quotation marks omitted).

In this case, the eyewitnesses testified that the twins were side by side when they approached the driver's side window of the parked vehicle. N.T., 6/3, 4, 9/08, at 143, 281. The twins remained side by side when one of the twins pulled out a gun and pointed it at the victim's head. *Id.* at 149–150, 284. The twins ran together alongside of the vehicle as the car pulled away. *Id.* at 150, 286. The twins also fled up the street together after the fatal gunshot was fired at the victim's head. *Id.* at 152, 288–289.

The jury weighed the evidence and concluded Appellant was liable for the crimes in question. This determination is not so contrary to the evidence so as to shock one's sense of justice. We decline Appellant's invitation to assume the role of fact finder and to reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in determining Appellant's weight of the evidence claim lacks merit.

Appellant next argues that the sentence imposed upon him by the sentencing court is in violation of the Eighth Amendment of the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution.[11] Appellant challenges his mandatory sentence of life imprisonment without the possibility of parole under the United States Supreme Court's decision in *Graham v. Florida*, 560 U.S. ——, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), which held that a sentence of life without parole for a

---

11. As we previously noted, Appellant's twin brother, Jovon Knox, took an appeal which was listed at 599 WDA 2009. Jovon has also raised the issue of whether a life sentence without the possibility of parole for a juvenile violates the Eighth Amendment prohibition against cruel and unusual punishment.

juvenile in non-homicide crimes is cruel and unusual punishment, in violation of the Eighth Amendment. Specifically, "Appellant contends this honorable court should engage in an 8th Amendment *Graham* analysis, not of all life sentences given to juvenile offenders, but rather, this court should consider the narrower question of whether life without parole ... sentences given to juveniles under felony murder rule and/or conspiracy theories of liability constitute cruel and unusual punishment." Appellant's Brief at 39.

Appellant also relies upon the United States Supreme Court's decision in *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (prohibiting the death penalty for defendants who were convicted of murder when they had committed their crimes before the age of 18), to support his position that juveniles should be treated differently for sentencing purposes, even when the juveniles are tried as adults. In prohibiting the death penalty for juveniles, the United States Supreme Court recognized the emerging body of sciences confirming the distinct emotional, psychological, and neurological status of youth. *Id.* at 569–574, 125 S.Ct. 1183. Thus, Appellant would have this Court consider the narrow question of whether sentencing a juvenile, pursuant to 18 Pa.C.S.A. § 1102(b), to a sentence of life imprisonment without parole for second-degree murder under Pennsylvania's felony mur-

der rule and/or criminal conspiracy theory of liability amounts to cruel and unusual punishment.[12]

"[A]n appellant who challenges the constitutionality of his sentence of imprisonment on a claim that it violates his right to be free from cruel and unusual punishment raises a legality of the sentencing claim." *Commonwealth v. Yasipour*, 957 A.2d 734, 740 n. 3 (Pa.Super.2008), *appeal denied*, 602 Pa. 658, 980 A.2d 111 (2009). A punishment is cruel and unusual "only if it is so greatly disproportionate to an offense as to offend evolving standards of decency or a balanced sense of justice." *Commonwealth v. Ehrsam*, 355 Pa.Super. 40, 512 A.2d 1199, 1210 (1986), *appeal denied*, 515 Pa. 573, 527 A.2d 535 (1987).

Case law addressing the Eighth Amendment has evolved significantly over the past several decades. As stated by the United States Supreme Court, "[a] claim that punishment is excessive is judged not by the standards that prevailed in 1685 when Lord Jeffreys presided over the 'Bloody Assizes' or when the Bill of Rights was adopted, but rather by those that currently prevail." *Atkins v. Virginia*, 536 U.S. 304, 311, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). "The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Id.* at 311–312, 122 S.Ct.

---

**12.** Our Supreme Court granted allowance of appeal to address the constitutionality of a mandatory sentence of life without parole imposed on a 14–year–old offender convicted of first-degree murder. *See Commonwealth v. Batts*, 603 Pa. 65, 981 A.2d 1283 (2009). Oral argument was held before the Supreme Court on December 1, 2010. On July 9, 2012, the Supreme Court ordered the parties to file supplemental briefs, based upon the *Miller* decision, to address the following questions:

(1) What is, as a general matter, the appropriate remedy on direct appeal in

Pennsylvania for a defendant who was sentenced to a mandatory term of life imprisonment without the possibility of parole for a murder committed when the defendant was under the age of eighteen?

(2) To what relief, if any, is appellant entitled from the mandatory term of life imprisonment without parole for the murder he committed when he was fourteen years old?

Order, 7/9/12. Argument is scheduled for September 2012. *Id.*

2242 (quoting *Trop v. Dulles,* 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)).

In *Roper,* the defendant, at the age of seventeen, planned and committed a capital murder and was sentenced to receive the death penalty. Subsequently, however, the United States Supreme Court categorically removed mentally handicapped individuals from those who are qualified to receive the death penalty in *Atkins v. Virginia,* 536 U.S. 304, 311, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). After *Atkins* was decided, the Missouri Supreme Court set aside Roper's death sentence and imposed a term of life imprisonment without parole. The State then appealed to the United States Supreme Court.

The United States Supreme Court in *Roper* specifically addressed the question of whether the death penalty is a disproportionate punishment for juveniles. The Supreme Court ruled that the Eighth Amendment of the Constitution of the United States prohibits the execution of a defendant who was less than eighteen years of age when the crime was committed because juveniles, generally, are less culpable for their actions. *Roper,* 543 U.S. at 578, 125 S.Ct. 1183. The prohibition on the juvenile death penalty followed from the conclusion that "[t]hree general differences between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders." *Id.* at 569, 125 S.Ct. 1183. These differences are a lack of maturity and an underdeveloped sense of responsibility, a heightened susceptibility to negative influences and outside pressures, and the fact that the character of a juvenile is "more transitory" and "less fixed"

than that of an adult. *Id.* at 569–570, 125 S.Ct. 1183. Together, these factors establish the "diminished culpability of juveniles." *Id.* at 571, 125 S.Ct. 1183. *Roper* emphasized that one's "culpability or blameworthiness is diminished, to a substantial degree, by reason of youth and immaturity." *Id.* Thus, there is a general presumption of diminished culpability that *Roper* indicates should apply to juvenile offenders.

The Court in *Roper,* relying upon rights created under the Eighth and Fourteenth Amendments, reasoned "[o]nce the diminished culpability of juveniles is recognized, it is evident that the penological justifications for the death penalty apply to them with lesser force than to adults." *Id.* at 571, 125 S.Ct. 1183. The Court explained that capital punishment must "be limited to those offenders who commit 'a narrow category of the most serious crimes' and whose extreme culpability makes them 'the most deserving of execution.'" *Id.* at 568, 125 S.Ct. 1183 (quoting *Atkins,* 536 U.S. at 319, 122 S.Ct. 2242). However, *Roper* barred only the imposition of the death penalty for a juvenile offender. The United States Supreme Court did not expressly consider the constitutionality of a sentence of life imprisonment without parole for a juvenile convicted of murder because the issue was not raised by the State of Missouri, which brought the appeal in *Roper.*

Subsequently, the United States Supreme Court issued its decision in *Graham* which, as previously noted, held that the Eighth Amendment prohibited a juvenile from being sentenced to a term of life imprisonment without parole for a non-homicide crime.[13] *Graham,* 560 U.S. at

---

**13.** We observe that in *Commonwealth v. Ortiz,* 17 A.3d 417 (Pa.Super.2011), a panel of this Court addressed whether the United States Supreme Court's decision in *Graham* would qualify as an exception to the PCRA timeliness requirements. This Court ultimately concluded that *Graham,* which held that life sentences without the possibility for parole of juveniles convicted of non-homicide crimes violate the Eighth Amendment protection

——, 130 S.Ct. at 2030. The defendant in *Graham* was convicted of armed robbery with assault or battery, and attempted armed robbery. He ultimately received a sentence of life imprisonment without parole. In *Graham*, the Court synthesized its holdings in *Atkins* and *Roper*, among other decisions, in reaching its conclusion. The Court relied upon *Roper* to reach the determination that, "because juveniles have lessened culpability they are less deserving of the most severe punishments."[14] *Graham*, 560 U.S. at ——, 130 S.Ct. at 2026.

The Court also offered the following relevant summation:

> It follows that, when compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability. **The age of the offender and the nature of the crime each bear on the analysis.**

*Id.* at ——, 130 S.Ct. at 2027 (emphasis added). The Court recognized that the reduced culpability of juveniles and their distinctive constitutional status categorically make the imposition of a life sentence without the possibility of parole unconstitutional for certain offenses. The Court also recognized that juveniles, in general, are more amenable to rehabilitation. Specifically, the Court observed that, "[f]or juvenile offenders, who are most in need of and receptive to rehabilitation, ... the absence of rehabilitative opportunities or treatment [which is often the case when sentenced to life without parole] makes the disproportionality of the sentence all the more evident." *Id.* at ——, 130 S.Ct. at 2030. In *Graham*, the Court ultimately concluded that the age of the defendant and the nature of the non-homicide crime precluded the imposition of the sentence of life imprisonment without the possibility of parole.[15] However, the Court in *Graham* limited its holding to those who do not kill, intend to kill, or foresee that life will be taken. *Id.* at ——, 130 S.Ct. at 2027.

■ With this jurisprudential background in mind, we turn to the United

---

against cruel and unusual punishment, was not applicable to the timeliness exceptions to the PCRA because it did not clearly enunciate a constitutional right to be applied retroactively to those who, like the appellant in *Ortiz*, were convicted of homicide crimes. The narrow issue before the Court in *Ortiz* was whether *Graham* established an exception to the PCRA's timeliness requirements based upon the facts of the case and the PCRA case law applicable to such a determination. Regardless, its commentary on the constitutionality of a life sentence without the possibility of parole has clearly been abrogated by the United States Supreme Court's recent decision in *Miller*, as discussed *infra*.

**14.** The Court in *Graham* offered the following to emphasize the severity of a sentence of life imprisonment without parole:

> As for the punishment, life without parole is "the second most severe penalty permitted by law." It is true that a death sentence is "unique in its severity and irrevocability," yet life without parole sentences share some characteristics with death sentences that are shared by no other sentences. The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency—the remote possibility of which does not mitigate the harshness of the sentence.

*Graham*, 560 U.S. at ——, 130 S.Ct. at 2027 (citations omitted).

**15.** In this Court's recent decision in *Commonwealth v. Whitaker*, 30 A.3d 1195 (Pa.Super.2011), the panel addressed a sentence of life in prison without parole imposed upon a juvenile convicted of first-degree murder. In reaching its conclusion, the Court stated: "[i]n light of *Ortiz* [*supra*], we find Appellant's claim that his sentence [of life in prison without the possibility parole] constitutes cruel and unusual punishment is without merit." *Id.* at 1198. *Whitaker* has clearly been overruled by *Miller*.

States Supreme Court's recent *Miller* decision, which is the controlling law on the issue currently before us. First, however, we reiterate that there is no single particular statute in Pennsylvania which directs that juveniles must be sentenced to a term of life in prison without parole upon a conviction of second-degree murder. Rather, a series of statutes in Pennsylvania intertwine to reach the result of a mandatory sentence of life imprisonment without parole for juveniles convicted of second-degree murder. The Juvenile Act provides that when a juvenile is charged with murder, criminal courts automatically have original jurisdiction and the burden rests upon the juvenile to prove that the case should be transferred to juvenile court. 42 Pa.C.S.A. § 6322(a). It is the Crimes Code which mandates that a person who has been convicted of murder of the second degree shall be sentenced to a term of life imprisonment. 18 Pa.C.S.A. § 1102(b). Furthermore, the statute governing the Pennsylvania Board of Probation and Parole (the "Parole Board") instructs that the Parole Board may not parole an inmate serving life imprisonment. 61 Pa.C.S.A. § 6137(a)(1). By virtue of these three provisions, a juvenile in Pennsylvania, charged and convicted with second-degree murder, must receive a sentence of life imprisonment and the Parole Board may not grant parole to the juvenile.[16,17]

In *Miller*, the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller*, 567 U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). Because Pennsylvania's sentencing scheme mandates life imprisonment without the possibility of parole for juveniles convicted of second-degree murder, it is clearly unconstitutional under *Miller*. It is likewise unconstitutional under Article 1, Section 13 of the Pennsylvania Constitution. *See Cottom*, 616 A.2d at 1003 (Pennsylvania prohibition against cruel and unusual punishment coextensive with the Eighth and Fourteenth Amendments of the United States Constitution). However, *Miller* does not establish a categorical ban. Although the Supreme Court thought "appropriate occasions for sentencing juveniles to this harshest possible penalty will

**16.** We note that a report from the Human Rights Watch, titled: "The Rest of Their Lives; Life without Parole for Child Offenders in the United States," indicates that the number of juvenile murder offenders in the entire United States who entered prison with sentences of life without parole was miniscule in 1980, peaked in 1996, and declined significantly by the early 2000s. *See* Human Rights Watch Report, 10/11/05, at Table 4. In addition, we observe that, of the total number of juveniles serving sentences of life without parole in the United States, over one-half of the total juveniles imprisoned were from the following four states: Pennsylvania, Michigan, Florida, and California. *See id.* at Table 5. In fact, Pennsylvania had the highest number of juvenile inmates serving sentences of life imprisonment without parole.

**17.** Regarding the judgments of the international community, we note, as did the Supreme Court in *Graham*, that a scholarly article published in 2008 concluded that only 10 nations in addition to the United States authorize sentences of life imprisonment without parole for juveniles under any circumstance. The study listed the other nations as: Antigua and Barbuda, Argentina, Australia, Belize, Brunei, Cuba, Dominica, Saint Vincent and the Grenadines, the Solomon Islands, and Sri Lanka. 42 U.S.F. L.Rev. 983, 1004–1005 (2008). As the Court in *Graham* further explained, of the eleven nations, which authorize life imprisonment without parole under any circumstance, "the United States is the only Nation that **imposes** life without parole sentences." *Graham*, 560 U.S. at ——, 130 S.Ct. at 2034 (emphasis added).

be uncommon," it did "not foreclose a sentencer's ability to make that judgment in homicide cases," assuming that sentencers "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller*, 567 U.S. at ——, 132 S.Ct. 2455. The Court thus mandates that there be a process, citing immaturity, family environment, circumstances of the crime and the possibility of rehabilitation as being important considerations for the sentencer. *Id.* at ——, 132 S.Ct. 2455. Although the Court does not delineate specific guidelines, it states that its decision "flows straightforwardly from [its] precedents: specifically, the principle of *Roper, Graham*, and [its] individualized sentencing cases that youth matters for purposes of meting out the law's most serious punishments." *Id.* at ——, 132 S.Ct. 2455.[18]

■ In summary, a mandatory sentence of a term of life imprisonment without the possibility of parole for a juvenile offender in Pennsylvania is a violation of the Eighth Amendment of the United States Constitution, as well as Article I, Section 13 of the Pennsylvania Constitution. Because Appellant was sentenced to a mandatory sentence of life in prison without the possibility of parole for the commission of a second-degree murder as a juvenile, we are constrained to vacate the judgment of sentence and remand the case to the trial court for resentencing.

■ We emphasize that our disposition does not mean that it is unconstitutional for a juvenile actually to spend the rest of his life in prison, only that the mandatory nature of the sentence, determined at the outset, is unconstitutional. Therefore, although *Miller* did not delineate specifically what factors a sentencing court must consider, at a minimum it should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation. *Miller*, 567 U.S. at ——, 132 S.Ct. 2455. Prior to sentencing, we anticipate that the trial court will order briefs from the Commonwealth and Appellant, and accept briefs from their *amici*, if any, on these factors and the issue of whether life with or without the possibility of parole should be imposed.

Appellant next argues the trial court abused its discretion in denying Appellant's motion to suppress the statement he made to police the day after the shooting. Appellant asserts the Commonwealth failed to meet its burden of showing that Appellant knowingly, voluntarily, and intelligently waived his *Miranda* rights where, despite the fact he was a juvenile at the

---

18. Appellant further contends that this Court's panel decision in *Commonwealth v. Carter*, 855 A.2d 885 (Pa.Super.2004), which was relied upon by the trial court in this case, has been called into question by the United States Supreme Court's subsequent decisions in *Roper* and *Graham*. *Carter* concluded that the imposition of a life sentence for a juvenile convicted of felony murder was not cruel and unusual punishment within the context of a

PCRA appeal. The panel in *Carter* justified its conclusion by reasoning that "Appellant's age does not entitle him to differential treatment." *Carter*, 855 A.2d at 892. Appellant contends that subsequent Supreme Court precedent, specifically *Roper*, establish that juveniles should be treated differently. Clearly, the premise that a mandatory life sentence without the possibility of parole for juveniles is constitutional has been overruled by *Miller*.

time, he was not given an opportunity to consult with an interested adult.

The standard of review an appellate court applies when considering an order denying a suppression motion is well established. An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *Commonwealth v. Russo*, 594 Pa. 119, 126, 934 A.2d 1199, 1203 (2007) (citing *Commonwealth v. Boczkowski*, 577 Pa. 421, 846 A.2d 75 (2004)). Where the record supports the factual findings of the suppression court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Id.* It is also well settled that the appellate court is not bound by the suppression court's conclusions of law. *Id.* (citing *Commonwealth v. Duncan*, 572 Pa. 438, 817 A.2d 455 (2003)). However, [w]hether a confession is constitutionally admissible is a question of law and subject to plenary review. *Commonwealth v. Nester*, 551 Pa. 157, 160, 709 A.2d 879, 881 (1998).

> Thus, this Court does not, nor is it required to, defer to the suppression court's legal conclusions that a confession or *Miranda* waiver was knowing or voluntary. Instead, we examine the record to determine if it supports the suppression court's findings of fact and if those facts support the conclusion that, as a matter of law, Appellant knowingly and intelligently waived his *Miranda* rights. Preliminarily, we note:
>
>> Regardless of whether a waiver of *Miranda* is voluntary, the Commonwealth must prove by a preponderance of the evidence that the waiver is also *knowing and intelligent.*
>>
>> *Miranda* holds that "[t]he defendant may waive effectuation" of the rights

conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." The inquiry has two distinct dimensions. First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that *Miranda* rights have been waived.

*Commonwealth v. Cephas*, 361 Pa.Super. 160, 522 A.2d 63, 65 (1987) (emphasis in original).

*In the Interest of T.B.*, 11 A.3d 500, 505–506 (Pa.Super.2010).

A determination of whether a juvenile knowingly waived his *Miranda* rights and made a voluntary confession is to be based on a consideration of the totality of the circumstances, including a consideration of the juvenile's age, experience, comprehension, and the presence or absence of an interested adult. *In Interest of N.L.*, 711 A.2d 518, 520 (Pa.Super.1998). In examining the totality of circumstances, we also consider: (1) the duration and means of an interrogation; (2) the defendant's physical and psychological state; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) "any and all other factors that could drain a person's ability to withstand suggestion and coercion." *Nester*, 551 Pa. at 164, 709 A.2d at 882. "[W]e acknowledge that the *per se* requirement of the presence of an interested adult during a police interview

of a juvenile is no longer required. Nevertheless, it remains one factor in determining the voluntariness of a juvenile's waiver of his *Miranda* rights." *In the Interest of T.B.*, 11 A.3d at 507 (citing *Commonwealth v. Williams*, 504 Pa. 511, 475 A.2d 1283 (1984)).

The trial court offered the following analysis pertaining to this claim:

> At the time he was questioned by the police, [Appellant] was 17 years old....
>
> The record reflects that [Appellant's] father was contacted but declined to come to the police station for the interrogation. The record further reflects that [Appellant] denied being at the scene of the crime altogether and made no inculpatory statements. As this Court noted:
>
>> THE COURT: The Court has always had a degree of concern where a disinterested or uncaring parent's attitude falls on the shoulders of a juvenile. I, however, do not find that to be true in this case. I agree that [Appellants] were well into their seventeenth year. Detective Weismantle said they both seemed to understand what was going on, responsive, that the period of questioning was short.
>>
>> They had a prior—apparently a prior adjudication for robbery. This is a homicide with which they were charged, and one of the most important things is the statements were exculpatory as to both of them. So as a result, I will deny both the omnibus pretrial motions.
>
> (Pretrial Motions Hearing Transcript, p. 39–40).
>
> Given the circumstances of this particular case—[Appellant's] age, his awareness of his surroundings, his familiarity with the criminal justice system and, most importantly, his completely exculpatory statement—this Court was well

within its discretion in denying [Appellant's] pretrial Motion to suppress. This claim must fail.

Trial Court Opinion, 9/14/09, at 9–10.

■ Likewise, our review of the record indicates the totality of the facts support the trial court's decision to deny Appellant's motion to suppress. Appellant was seventeen years old at the time of the interview by the police. Appellant had a ninth grade educational level. N.T., 5/20/08, at 28. Appellant had previous exposure to the legal system, the most recent being for a robbery the year before the current incident. *Id.* at 10. Appellant did not display any trouble understanding the questions on the *Miranda* forms. *Id.* at 11. Appellant did not appear to be under the influence of any drugs or alcohol at the time. *Id.* In addition, the interview of Appellant which followed the signing of the *Miranda* forms was characterized as "fairly brief" and "very brief," with Appellant denying being involved and offering vague responses to questions. *Id.* at 11–12, 19. Regarding the lack of presence of Appellant's father at the police station, the record reflects that Appellant's father was contacted by police and, although concerned for the safety of his sons and aware that they were going to be questioned, was not interested in going to the police station. *Id.* at 19, 25–26.

In summary, Appellant was seventeen, had previous exposure to the legal system, was only briefly questioned by police, understood his questioning and his rights. Consequently, it is our conclusion that the trial court did not err in denying Appellant's motion to suppress his statement to police.

■ Appellant last argues that his post-sentence claims of ineffective assistance of counsel should be remanded for the continuation of hearings by the trial

court. Specifically, Appellant notes that he was pursuing, *via* post-sentence motions, a claim that trial counsel was ineffective for her failure to seek decertification of Appellant's proceedings to juvenile court, and the trial court's hearing on the claim was halted when trial counsel refused to appear for the ineffective assistance of counsel hearing. Appellant asserts that the trial court had jurisdiction to continue with the proceedings and that the hearing should be completed.

We are constrained to conclude that Appellant's discussion contained in the argument section of Appellant's brief addressing this issue is not properly developed for appellate review. It is well settled that the argument portion of an appellate brief must be developed with pertinent discussion of the issue, which includes citations to relevant authority. Pa.R.A.P. 2119(a). *See Commonwealth v. Genovese*, 450 Pa.Super. 105, 675 A.2d 331, 334 (1996) (stating that "[t]he argument portion of an appellate brief must be developed with a pertinent discussion of the point which includes citations to the relevant authority").

In *Commonwealth v. B.D.G.*, 959 A.2d 362, 371–372 (Pa.Super.2008), a panel of this Court offered the following relevant observation regarding the proper formation of the argument portion of an appellate brief:

> In an appellate brief, parties must provide an argument as to each question, which should include a discussion and citation of pertinent authorities. Pa.R.A.P. 2119(a). This Court is neither obliged, nor even particularly equipped, to develop an argument for a party.

*Commonwealth v. Williams*, 566 Pa. 553, 577, 782 A.2d 517, 532 (2001) (Castille, J., concurring). To do so places the Court in the conflicting roles of advocate and neutral arbiter. *Id.* When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. *Commonwealth v. Luktisch*, 451 Pa.Super. 500, 680 A.2d 877, 879 (1996).

*Id.* at 371–372.

Here, Appellant's argument pertaining to this claim contains a summary of the procedural history as it relates to Appellant's post-sentence motions, and the bald legal conclusions that the trial court had proper jurisdiction over the matter and that the appropriate remedy is a remand for continuation of the hearing. *See* Appellant's Brief at 59–61. However, Appellant cites no legal authority to support his argument. Accordingly, we conclude that this issue is waived.[19]

In summary, we affirm Appellant's convictions because we have concluded there is no merit to his claims of trial court error. However, we vacate the judgment of sentence and remand for resentencing consistent with this opinion.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

---

**19.** Also, the Commonwealth notes that the post-sentence motion challenging counsel's effective assistance was filed in an untimely manner and that the trial court should not have held a hearing because the hearing was scheduled for a date after the motions had been denied by operation of law. *See* Commonwealth's Brief at 32–33. The Commonwealth concedes Appellant should not be precluded from raising his claim in a PCRA petition. *Id.* at 35.