J-S33014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  S.J.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  S.J.S., A MINOR | No. 1363 MDA 2016 |

Appeal from the Dispositional Order Entered August 17, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-JV-0000571-2016

BEFORE:  BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 15, 2017**

Appellant, S.J.S. (a minor), appeals from the juvenile court's dispositional order, entered after he was adjudicated delinquent for robbery, 18 Pa.C.S. § 3701(a)(1)(v).  We affirm.

The juvenile court summarized the facts adduced at Appellant's fact finding/denial hearing as follows:

> The first witness presented by the prosecution was Rosa Cintron. Ms. Cintron testified through the aid of an interpreter that she was going to church on June 7, 2016.  Her testimony was that there were two individuals following her as she was going to church. When she looked back, they both issued a greeting to her.
>
> Ms. Cintron testified she continued toward church and they followed her.  She was almost at the church and located in an alleyway when her purse was taken from her.  Her testimony was that the two individuals who were following her were young adults.  One had dark skin and one was lighter.  Her testimony was that the lighter-skinned individual was the one who physically removed the purse from her.  She testified that the dark-skinned individual was located in very close physical

---

[*] Retired Senior Judge assigned to the Superior Court.

proximity to both her and the lighter-skinned individual at the time the purse was taken.

Immediately after the purse was removed from her person, the two individuals took off running. Ms. Cintron testified that she went to church and a friend of hers called the police.

Ms. Cintron was later presented with two individuals by the police. Ms. Cintron identified [Appellant] as the dark-skinned individual who was with the light-skinned individual who took her purse. The contents of her purse included a checkbook, credit cards, medical cards, glasses, various papers, and $3 in cash.

Ms. Cintron was able to identify [Appellant] in the courtroom as the person who was the dark-skinned individual who was in close physical proximity to her at the time the purse was stolen. The [c]ourt finds the testimony presented by Rosa Cintron to be credible.

The second Commonwealth witness was Officer Jeremy Mayer. Officer Mayer was employed by the York City Police Department as of June 7, 2016, and was working on that day. Officer Mayer received a dispatch concerning the robbery and a general description of the two suspects.

Officer Mayer parked his patrol car in a parking lot in the general vicinity of the robbery. At approximately 11:37 a.m., he saw two juveniles running near the parking lot matching the description that he received from dispatch. One of the individuals running was a dark-skinned black male and the other individual was a lighter-complected male.

Officer Mayer testified that he and the two individuals clearly saw each other. At that moment, the two individuals changed the direction they were running and began to run eastbound in an alley.

Officer Mayer eventually saw the two individuals walking on a nearby street. Officer Mayer detained [Appellant's co-defendant]. [The co-defendant] was later found to have at least one item belonging to Rosa Cintron on his person.

Officer Mayer did not search [Appellant] and did not take statements from either of the [d]efendants. The [c]ourt finds that Officer Mayer's testimony was credible.

- 2 -

The final witness for the Commonwealth was Officer Justin Main. Officer Main was likewise employed by the York City Police Department and was working as of June 7, 2016. He received a call at approximately 10:20 or 10:30 [a.m.] concerning a robbery. He was dispatched to a church located on the 400 block of South Queen Street.

At that time, Officer Main met with Ms. Cintron's pastor who interpreted for her. At or about that time, an individual came to the church with items that he had found on the ground belonging to Ms. Cintron. The items were located by that individual in an area close to the Community Progress Council. Those items were identified by Ms. Cintron as belonging to her and were in her purse at the time the purse was stolen.

Officer Main then went to the Community Progress Council area. He did find a purse which Ms. Cintron later identified as hers. Upon going into the Community Progress Council building, Officer Main was able to locate security footage.

That security footage was later presented in court and was contained on Commonwealth's Exhibit 5. Commonwealth's Exhibit 4 was a still photograph that was taken off the video. The video shows a dark-skinned male and a light-skinned male walking down the alley together. It is clear that the video shows the dark-skinned individual passing an unidentified item to the light-skinned individual. The video was of sufficient clarity to show the clothing and skin color of the two juvenile males depicted on the video.

Officer Main then heard that Officer Mayer had seen the two individuals, and Officer Main then drove to that area. At that point, he saw the black-skinned male matching the description of the juvenile in question and detained that juvenile. That individual was later identified as [Appellant]. [Appellant] was wearing the exact same clothes at the time that he was detained as the individual who was depicted in the video.

Officer Main was present when Ms. Cintron identified [Appellant's co-defendant] and [Appellant] as the two individuals who were referenced previously. The [c]ourt finds that the testimony of Officer Main was credible.

At that point in time, the Commonwealth rested. Exhibits 4 and 5 were admitted without objection.

The defense did not present any witnesses….

N.T., 8/2/2016, at 44-49.

Ultimately, the juvenile court "found beyond a reasonable doubt … that [Appellant] was delinquent and that circumstantial evidence exists to establish accomplice liability for the crime of robbery[,]" and directed his placement at Abraxas Leadership Development Program (LDP). *See* Juvenile Court Opinion ("JCO"), 9/16/2016, at 4 (unnumbered pages). In reaching this decision, the juvenile court emphasized that Appellant and his co-defendant were "clearly together prior to the purse robbery, and they followed [Ms.] Cintron together immediately prior to the robbery." N.T. at 49. Further, they "greeted Ms. Cintron together immediately prior to the robbery[,]" both "were in very close physical proximity [to Ms. Cintron] at the time of the robbery[,]" and they "ran away together immediately following the robbery." *Id.* at 49-50. The juvenile court also stressed that, after the robbery, Appellant and his co-defendant "were seen together in a … security video walking together in an alleyway a short distance from the robbery[,]" and the video shows Appellant's "exchanging an unidentified item [with his co-defendant] in that video." *Id.* at 50. Later, when they see Officer Mayer, Appellant and his co-defendant "ran together in a different direction." *Id.*

On August 17, 2016, Appellant filed a timely notice of appeal, and subsequently filed a timely concise statement of matters complained of on

appeal pursuant to Pa.R.A.P. 1925(b). On appeal, Appellant raises a single issue for our review:

1. Whether the Commonwealth's evidence was sufficient to support the trial court's finding that … Appellant is criminally liable as an accomplice to the offense of [r]obbery; specifically, whether there was sufficient evidence presented beyond mere presence at and flight from the scene of a crime to establish circumstantially … Appellant's guilt?

Appellant's Brief at 3 (footnote omitted).

Initially, we set forth our standard of review:

In determining sufficiency of the evidence, we review the evidence admitted at trial, along with any reasonable inferences that may be drawn from that evidence, in the light most favorable to the verdict winner. A conviction will be upheld if after review we find that the jury could have found every element of the crime beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may prove each element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Furthermore, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

***Commonwealth v. Kimbrough***, 872 A.2d 1244, 1250-51 (Pa. Super. 2005) (internal citations and quotation marks omitted).

Here, Appellant argues that "the Commonwealth's evidence … was insufficient to support the trial court's finding that [Appellant] acted as an accomplice to the [r]obbery incident." Appellant's Brief at 5. Specifically,

Appellant insists that he "was merely present at the incident, and then fled with the principal from the scene, but did not otherwise participate in the robbery episode." *Id.* According to Appellant, "[t]here was no evidence presented that he shared in the proceeds of the robbery, or acted in any manner to aid or assist the purse snatching." *Id.* at 10. Instead, Appellant claims he "was simply just standing there." *Id.* We disagree.

In pertinent part, "[a] person is guilty of robbery if, in the course of committing a theft, he … physically takes or removes property from the person of another by force however slight[.]" 18 Pa.C.S. § 3701(a)(1)(v). Additionally, "[a] person is an accomplice of another person in the commission of an offense if … with the intent of promoting or facilitating the commission of the offense, he … solicits such other person to commit it; or … aids or agrees or attempts to aid such other person in planning or committing it[.]" 18 Pa.C.S. § 306(c)(1). Thus, to establish accomplice liability, "a two-prong test must be satisfied." ***Kimbrough***, 872 A.2d at 1251. "First, there must be evidence to show that [the alleged accomplice] intended to facilitate or promote the underlying offense. Second, there must be evidence that [the alleged accomplice] actively participated in the crime or crimes by soliciting, aiding, or agreeing to aid the principal…." ***Id.*** (citations omitted). It is well-established that "[b]oth requirements may be established wholly by circumstantial evidence. Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice." ***Id.*** (original brackets,

- 6 -

quotations, and citation omitted). Further, this Court has discerned that "[n]o agreement is required, only aid." *Id.* (citation omitted). Finally, we note that:

> To establish complicity, mere presence at the scene of a crime and knowledge of the commission of criminal acts is not sufficient. Nor is flight from the scene of a crime, without more, enough. However, those factors combined, along with other direct or circumstantial evidence may provide a sufficient basis for a conviction, provided the conviction is predicated upon more than mere suspicion or conjecture.

*Commonwealth v. Knox*, 50 A.3d 732, 739 (Pa. Super. 2012) (citation omitted).

In the case *sub judice*, there was sufficient evidence to satisfy both prongs of the above-stated test. The robbery victim, Rosa Cintron, described her encounter with Appellant and his co-defendant as follows:

> [The Commonwealth:] [] Do you remember the date of June 7th of 2016?
>
> [Ms. Cintron:] Yes.
>
> [The Commonwealth:] And what were you doing that morning?
>
> [Ms. Cintron:] That day I was going to church. And I turned where I always turn to go to church, and there were two guys behind me.
>
> [The Commonwealth:] And about what time in the morning did you leave your home?
>
> [Ms. Cintron:] I left around eight.
>
> [The Commonwealth:] And that was to go to church?
>
> [Ms. Cintron:] Yes.
>
> [The Commonwealth:] And you said you saw two I believe young men following you.
>
> [Ms. Cintron:] Yes.

[The Commonwealth:] When did you notice them?

[Ms. Cintron:] When I looked back and they said hi to me, and then they -- I continued and they continued behind me.

[The Commonwealth:] In relation to her house –- to your home, where was this?

[Ms. Cintron:] I was –- I was almost at the church and there was an alley there and that's –- they took my purse.  They pulled it out, and they took off running.

*** 

[The Commonwealth:] Can you describe how they took your purse?

[Ms. Cintron:] I was holding -– I had my purse here holding it, and then they approached me.  They pulled it out and took off running.

[The Commonwealth:] Who was the individual that grabbed at your purse?

[Ms. Cintron:] The white one.

[The Commonwealth:] Now, you had described two individuals. So while the lighter-skinned individual was grabbing at your purse, where was the darker-skinned individual?

[Ms. Cintron:] He was standing by him next to him.

[The Commonwealth:] When you say next to him, I'm going to have you clarify the distance.  Are we talking about a distance to you to the stenographer or --

[Ms. Cintron:] No.  Closer.

[The Commonwealth:] Okay.  Where the interpreter is to you?

[Ms. Cintron:] Yes.  Like this.

[The Commonwealth:] And that's where the dark-skinned individual was standing in respect to you?

[Ms. Cintron:] Yes.[1]

[The Commonwealth:] And did they have a chance to actually take your purse?

[Ms. Cintron:] Yes.  And they took off running.  That's when I yell and then a sister from church came out and asked me what happened.  And I said that somebody had taken my purse.

N.T. at 5-8.

Further, as mentioned above, Officer Jeremy Mayer testified that he observed Appellant and his co-defendant running together following the robbery, and they remained together until Officer Mayer attempted to talk to them and then they "split [up]…." *Id.* at 14-17.  In addition, Officer Justin Main explained that a surveillance video was obtained after the robbery, showing Appellant and his co-defendant "passing objects back and forth" near where Ms. Cintron's purse was found.  *Id.* at 24-25, 29; *see also* JCO at 3 ("Video footage shows a dark skinned male and a light skinned male walking down the alley together and passing an unidentified item.").[2]

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, this testimony was sufficient to show that Appellant acted as an accomplice in the robbery.  First, the evidence supported that

_____

[1] To make clear, the juvenile court stated that Ms. Citron testified that Appellant and his co-defendant were in "very close physical proximity to her, a distance of within several feet…."  JCO at 3.

[2] Upon watching the surveillance video, Officer Main stated, "I can't completely confirm exactly what it was [Appellant and his co-defendant were passing].  It was a black object.  It looked like it was handed off between [Appellant] and handed to [his co-defendant]."  N.T. at 31.

Appellant intended to facilitate the robbery by following Ms. Cintron, approaching her in the alleyway, and running away after his co-defendant took her purse. Second, Appellant aided in committing the robbery by approaching Ms. Cintron in conjunction with his co-defendant and standing close to her, which one can reasonably infer would intimidate and/or distract Ms. Cintron so that her purse could be taken.[3] The surveillance video — along with Officer Mayer's sightings of Appellant and his co-defendant running together after the robbery — further supported their complicity. For these reasons, we deem the evidence sufficient to sustain Appellant's adjudication for robbery, and affirm the juvenile court's dispositional order.

Dispositional order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2017

---

[3] **See also Knox**, 50 A.3d at 739-40 (stating that the record reflected that two co-defendants "acted in concert and had agreed to rob the victim" where they were side by side when they approached the victim's parked vehicle, remained side by side when one co-defendant pointed a gun at the victim's head, ran together alongside the vehicle when it pulled away, and fled together after the armed co-defendant fired his gun at the victim's head).