J-S18027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAMON VASQUEZ | |
| Appellant | No. 1171 MDA 2015 |

Appeal from the Judgment of Sentence April 29, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0004704-2013

BEFORE:  BOWES, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 23, 2016**

Ramon Vasquez appeals from his judgment of sentence, imposed in the Court of Common Pleas of Berks County, after a jury found him guilty of flight to avoid apprehension[1] and related offenses.  Upon careful review, we affirm.

Around 3:00 p.m. on June 19, 2013, Vasquez entered the office of Magisterial District Judge Wally Scott to turn himself in on an outstanding warrant.  N.T. Trial, 4/15/14, at 51.  At the time, Vasquez believed that the outstanding warrant was for a summary offense.  *Id.*  After discovering that Vasquez had an outstanding warrant for misdemeanor theft, Judge Scott

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 5126.

called Vasquez into his courtroom and informed him of this fact. *Id.* at 55-56. Judge Scott informed Vasquez of his rights and read him the affidavit of probable cause and complaint from the bench. *Id.* When Judge Scott had finished and handed Vasquez the arraignment information sheet, Vasquez told the judge that there had been a mistake and that his girlfriend had contacted the police department to drop the charges against him. *Id.* at 59-60. Judge Scott agreed to call Vasquez's girlfriend to ask if she wanted to go forward with the charges. *Id.* at 60-61.

Vasquez testifies that, at this point, he told the guard, Kyley Scott, that he was going to use the bathroom. *Id.* at 120. As Judge Scott hung up the phone, Vasquez stood up from his chair and put on his backpack and hat, as if preparing to leave. *Id.* at 62. Judge Scott repeatedly directed Vasquez to retake his seat and walked out from behind the bench and stood at the top of the courtroom's exit ramp. As Vasquez approached the courtroom door, Judge Scott positioned himself between Vasquez and the threshold, blocking Vasquez's exit. Kyley Scott grabbed Vasquez and attempted to pull him back into the courtroom. Vasquez shook off Kyley Scott's grasp, pushed past Judge Scott, and exited the courtroom. *Id.* at 121.

Vasquez then exited the building and ran towards his motorcycle, which was parked outside on the street. Luis Negron, who was taking a cigarette break outside of a business across the street, witnessed Vasquez fleeing from the building, with Judge Scott and Kyley Scott trailing behind

him. *Id.* at 100-01. Negron ran across the street and grabbed Vasquez by the back of the shoulders as he attempted to start his motorcycle. Vasquez then revved the engine suddenly and reared back on the bike, freeing himself of Negron's grip. Vasquez then took off down the street at a high rate of speed. *Id.* at 101-02. Shortly thereafter, Vasquez crashed his motorcycle into a guardrail. *Id.* at 109. As Vasquez attempted to restart the motorcycle, he was approached by off-duty Reading Police Officer Christian Morar, who had been pursuing him since he left Magisterial Judge Scott's office. *Id.* at 110. After identifying himself as a police officer, Officer Morar approached Vasquez with his firearm drawn and ordered him to stop. When Officer Morar came within arm's length of Vasquez, he reached out with his hand and pushed Vasquez away from the motorcycle. The push caused Vasquez to fall backwards, allowing Officer Morar to grab the keys from the ignition. N.T. Omnibus Pretrial Hearing, 1/10/14, at 44. After securing his own vehicle and grabbing his taser, Officer Morar then pursued Vasquez on foot, but soon lost sight of him. *Id.* at 45. Vasquez later turned himself in to his bail bondsman and was taken to Berks County Prison. *Id.* at 127.

The trial court gave the following account of the procedural history of this case:

> On April 15, 2014, following a jury trial, [Vasquez] was found guilty of flight to avoid apprehension, trial or punishment and other related offenses. On April 29, 2014, [Vasquez] was sentenced to nine months to two years of incarceration in a state correctional facility. [Vasquez] was represented at trial and

sentencing by Holly B. Freeney, Esquire, of the Berks County Public Defender's Office.

On April 29, 2014, this court granted Ms. Feeney's Motion for Leave to Withdraw as Counsel, and appointed Nicholas Stroumbakis, Esquire, to represent [Vasquez] on Appeal. On or about November 19, 2014, [Vasquez] filed a *pro se* Motion for Withdrawal of Counsel and Appointment of Replacement Counsel, which this court interpreted to be a petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541-9546. Accordingly, on December 2, 2014, this court appointed Osmer S. Deming, Esquire, to represent [Vasquez].

On June 11, 2015, Attorney Deming filed an Amended Petition for Post Conviction Collateral Relief in which he sought to have [Vasquez's] direct appellate rights reinstated, *nunc pro tunc*. This court granted [Vasquez's] Amended Petition that same day, and on July 9, 2015, Attorney Deming filed a Notice of Appeal on [Vasquez's] behalf. On July 13, 2015 the court ordered [Vasquez] to file a Concise Statement of Errors Complained of on Appeal. [Vasquez] complied with this court's order on August 3, 2015.

Trial Court Opinion, 9/18/15, at 1-2. The trial court filed its Pa.R.A.P. 1925(a) memorandum opinion on September 18, 2015. Vasquez raises the following two issues on appeal:

1. Was the evidence sufficient to support the conviction for flight to avoid apprehension?

2. Was the verdict against the weight of the evidence to support the conviction for flight to avoid apprehension?

Appellant's Brief, at 5.

Vasquez claims the evidence was insufficient to prove beyond a reasonable doubt that he acted with the intent to avoid apprehension, trial or punishment or that he intentionally attempted to elude law enforcement. Appellant's Brief, at 14-15. Vasquez argues that he arrived at Magisterial Judge Scott's office with the intent to turn himself in to authorities and then

only fled after being attacked by Judge Scott and his staff. He also asserts that his flight cannot be characterized as an intentional attempt to elude law enforcement because Judge Scott and his security guard are not law enforcement and he did not know that Officer Morar was an off-duty police officer. *Id.* at 15.

Our standard of review in assessing a challenge to the sufficiency of the evidence is well-settled. "The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013). "Any doubts concerning an appellant's guilt [are] to be resolved by the trier of fact unless the evidence was so weak and inconclusive that no probability of fact could be drawn therefrom." *Commonwealth v. West*, 937 A.2d 516, 523 (Pa. Super. 2007). "[T]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Perez*, 931 A.2d 703, 707 (Pa. Super. 2007).

Section 5126 of the Crimes Code defines the crime of flight to avoid apprehension, trial or punishment as:

> **(a) Offense defined.—**A person who willfully conceals himself or moves or travels within or without the Commonwealth with the intent to avoid apprehension, trial or punishment commits a

- 5 -

felony of the third degree when the crime which he has been charged with or has been convicted of is a felony and commits a misdemeanor of the second degree when the crime he has been charged with or has been convicted of is a misdemeanor.

18 Pa.C.S. § 5126(a). This Court has elaborated on the intent prong of section 5126 as follows:

[T]he plain language of the statute requires that the defendant intend to avoid apprehension, trial or punishment. The statute does not mandate that the defendant have knowledge of the precise grading of the offense for which he is attempting to avoid capture. The intent element of the crime is separate and apart from whether the person has been convicted or is charged with a felony. Furthermore, nothing in the statutory language requires that police have knowledge of the underlying charge or conviction. It is sufficient for the defendant to intentionally elude law enforcement to avoid apprehension, trial or punishment on a charge or conviction.

***Commonwealth v. Steffy***, 36 A.3d 1109, 1111-12 (Pa. Super. 2012).

Here, the trial court concluded that the Commonwealth proved beyond a reasonable doubt that Vasquez had the specific intent to support a conviction for flight to avoid apprehension, trial or punishment. According to Vasquez's own testimony, he fled from Magisterial Judge Scott's office on his motorcycle after learning that there was a warrant for his arrest. Trial Court Opinion, 9/18/15, at 3. Vasquez then fled a second time, this time on foot, after Officer Morar identified himself as an off-duty police officer and ordered Vasquez to stop. ***Id.***

In addition to the evidence cited by the trial court, the Commonwealth presented testimony from the only other two people in the courtroom besides Vasquez, Judge Scott and his guard, Kyley Scott; their testimony refuted Vasquez's testimony that he had asked to go to the bathroom to call

his lawyer. The Commonwealth also offered testimony from Judge Scott and Kyley Scott, as well as Officer Morar and Negron, that Vasquez did not go to the bathroom, nor did he call his lawyer, but instead ran from the office and rode away very quickly on his motorcycle.

Accordingly, we agree with the trial court that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to sustain Vasquez's conviction under section 5126(a). *Garland*, *supra*.

Next, Vasquez argues that he must be awarded a new trial because the verdict was against the weight of the evidence. Appellant's Brief, at 16. An allegation that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court. *Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa. Super. 2005) (citations omitted). *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008). A verdict is against the weight of the evidence only where the Commonwealth's evidence is so fundamentally inconsistent, unreliable, or tenuous that it shocks one's sense of justice to imagine that a factfinder could have credited it and used it to convict someone. *Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000). Moreover:

> [o]ur purview [with respect to a weight-of-the-evidence claim] is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Knox*, 50 A.3d 732, 738 (Pa. Super. 2012) (citations omitted).

Before we address the merits of Vasquez's weight claim, we must first determine whether Vasquez has preserved his weight challenge. Pursuant to Pa.R.Crim.P. 607, a challenge to the weight of the evidence "shall be raised with the trial judge in a motion for a new trial . . . orally, on the record, at any time before sentencing[,] by written motion at any time before sentencing[,] or in a post-sentence motion." Pa.R.Crim. 607(A)(1), (2), & (3). Moreover, a post-sentence motion "shall be filed no later than 10 days after imposition of sentence." Pa.R.Crim.P. 720(A)(1).

Instantly, the trial court reinstated only Vasquez's direct appeal rights *nunc pro tunc*. Where the court reinstates direct appeal rights *nunc pro tunc*, the appellant is not automatically entitled to reinstatement of his post-sentence rights *nunc pro tunc* as well. *Commonwealth v. Liston*, 977 A.2d 1089 (2009). Nevertheless, a PCRA court can reinstate a defendant's post-sentence rights *nunc pro tunc* if the defendant requested such relief from the PCRA court and if the court held an evidentiary hearing on the issue. *Commonwealth v. Fransen*, 986 A.2d 154 (Pa. Super. 2009).

In *Commonwealth v. Corley*, 31 A.3d 293 (Pa. Super. 2011), we explained that where the appellant was denied counsel entirely throughout the post-sentence and direct appeal period when he was constitutionally entitled to counsel, reinstatement of his appellate rights *nunc pro tunc* should have included the right to file a post-sentence motion *nunc pro tunc*,

because the appellant was without counsel at the time the post-sentence motion was due. Accordingly, we determined in **Corley** that the appellant did not waive his discretionary challenge to his sentence on direct appeal *nunc pro tunc*, even though his post-sentence rights were not reinstated *nunc pro tunc*. **Id.** at 297.

Here, as in **Corley**, Vasquez's direct appeal rights were reinstated on the basis that he had been denied the right to counsel in pursuing a direct appeal. Trial Court Order, 6/11/15. The trial court does not recognize, however, that immediately after imposing sentence on April 29, 2014, the court granted trial counsel's motion for leave to withdraw.[2] Notably, the court did not appoint Vasquez new counsel, for the purpose of filing post-sentence motions and an appeal, until May 7, 2014 – 8 days following sentencing. Accordingly, Vazquez was unrepresented 80% of the time within which he had to file timely post-sentence motions under Rule 720. In fact, Vasquez submitted a handwritten document entitled "Post Sentence Motion for Judgment of Acquittal" to the Clerk of Courts, dated May 7, 2014 and postmarked May 15, 2014. In the document, Vasquez requested to proceed with his post-sentence motion *pro se* until the court could appoint

---

[2] At this time, Holly Freeney, Esquire, reviewed the procedure for filing post-sentence motions and appeals with Vasquez and had him sign the "Defendant's Acknowledgement of Post Sentence Procedures Following Trial." **See** Defendant's Acknowledgement of Post Sentence Procedures Following Trial, 4/29/14, at 3.

replacement counsel. A copy of the letter was sent to Attorney Stroumbakis on May 19, 2014, well after the time period for filing timely post-sentence motions had expired. Additionally, Vasquez contends that he made several attempts to get in touch with Attorney Stroumbakis regarding the filing of post-sentence motions, both by mail and phone, but was unable to establish contact.

As in **Corley**, Vasquez's PCRA claim was based on appointed counsel's failure to file a post-sentence motion or appeal on his behalf, and Vasquez raises no other claims of ineffectiveness of counsel in his petition. In reliance on **Corley**, we decline to find waiver of Vasquez's weight challenge on the basis that he failed to preserve the claim in a post-sentence motion where: He was effectively denied the right to counsel during the time when he could file timely post-sentence motions and where he attempted to preserve those rights by objecting at sentencing and filing *pro se* post-sentence motions raising a weight of the evidence claim.[3] **See** Defendant's Post Sentence Motion for Judgement of Acquittal, 5/16/14, at 3.

Vasquez contends that the weight of the credible testimony establishes that he fled Judge Scott's office in order to escape the attacks of Judge Scott and Kyley Scott and not to avoid apprehension, trial, or punishment. Appellant's Brief at 16-17. First, Vasquez argues that his voluntary presence

---

[3] Vasquez acknowledges in his PCRA petition that he submitted a post-sentence motion.

at Judge Scott's office establishes that he "was trying to do the opposite of avoiding apprehension." *Id.* at 16. Second, Vasquez argues that the jury should have credited his testimony that he asked Kyley Scott for permission to "go to the bathroom to call a lawyer" before getting up to leave the courtroom and was then the victim of unprovoked attacks by Judge Scott and Kyley Scott. *Id.*

Whether or not Vasquez asked for permission to leave Judge Scott's courtroom, both Judge Scott and Kyley Scott testified that Vasquez ignored Judge Scott's repeated demands that he return to his seat and then physically pushed past Judge Scott to exit the courtroom. N.T. Trial, 4/15/14, at 62-66, 82-85. As the trial court noted in its Rule 1925(a) opinion, the jury "obviously found the testimony of [Judge] Scott, Kyley Scott, and Officer Morar to be credible." Trial Court Opinion, 9/18/15, at 4. Vasquez's own testimony largely corroborates the Commonwealth's account of his flight from Judge Scott's office. Once outside the building, the evidence shows that Vasquez ran to his motorcycle and rode off at a high rate of speed, crashing the vehicle shortly thereafter. *Id.* at 125. As Vasquez attempted to restart his motorcycle, Officer Morar approached him with his weapon drawn, identified himself as a police officer, and ordered him to get down. *Id.* at 110; 126. Vasquez ignored Officer Morar's orders and fled the scene on foot. *Id.* at 126.

Vasquez contends that he did not hear Officer Morar identify himself and, therefore, did not recognize him as a police officer. *Id.* However, the

- 11 -

evidence shows that Officer Morar approached Vasquez within moments of his flight from Judge Scott's office, drew his firearm, and ordered Vasquez to get on the ground. Taken together with the testimony of Judge Scott and Kyley Scott, these facts would support a conviction under section 5126.

After careful review, we find that the trial court did not abuse its discretion. **Knox**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/23/2016