J-S91032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                               :  PENNSYLVANIA
                                               :
              v.                            :
                                             :
AKEITA HARDEN                      :
                                             :
             Appellant         :  No. 625 MDA 2016

Appeal from the Judgment of Sentence December 2, 2015
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000558-2014

BEFORE: FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:        **FILED FEBRUARY 15, 2017**

Appellant Akeita Harden appeals from the judgment of sentence entered by the Court of Common Pleas of Lebanon County after a jury convicted Appellant of criminal homicide, attempted homicide, aggravated assault, robbery, criminal conspiracy to commit the aforementioned crimes, and various related charges. Appellant claims the Commonwealth failed to establish that she acted with the requisite specific intent to be convicted as a co-conspirator or an accomplice to homicide, aggravated assault or robbery. After careful review, we affirm.

On March 10, 2014, Officer James Gross responded to a report of a possible shooting at 714 Fox Ridge Lane. Upon his arrival at the scene, Officer Gross observed a man walk out of the townhouse to which he was

---

* Former Justice specially assigned to the Superior Court.

responding. Officer Gross asked the man to stop, but the man ignored this request and entered a waiting red Cadillac SUV where a woman was seated in the driver's seat. Officer Gross then saw another man leave the same area. At that point, Officer Gross withdrew his weapon and ordered the second man to stop. The second man also ignored Officer Gross and got into the same SUV, which reversed out of the parking lot.

Officer Gross followed the SUV, which led officers on a high speed chase on Route 897 into Lebanon. During the pursuit, Officer Gross observed an object thrown from the car which was later identified as a shotgun. When the vehicle stopped on Guilford Street, the two male passengers exited the vehicle and ran in different directions while the female drove away in the SUV. Officer Gross was able to apprehend one of the male passengers two blocks away and identified him as Rick Cannon (hereinafter "Cannon").

Officers were able to identify Appellant as the female driver after she illegally parked the SUV in a residential property and ran away. When the officers approached Appellant, she immediately claimed to have done nothing wrong and asserted her boyfriend was abusing her. Upon searching the SUV and the area from which the passengers fled, officers found cocaine, a handgun, a key, a watch, a ring, a roll of duct tape, and the cell phone of Appellant's paramour, Eddie Williams ("Williams"). The officers identified Williams as the second male passenger in the SUV. Williams was apprehended months later in Philadelphia for a narcotics violation.

Parallel in time to this high speed chase, law enforcement officers investigated the shooting reported at 714 Fox Ridge Lane and discovered two male victims that had been shot in the head. The victims were later identified as Marcus Ortiz ("Ortiz") and Keith Crawford ("Crawford"). While Crawford survived the attack with serious injuries, Ortiz did not survive. Dr. Supriya Kuruvilla performed Ortiz's autopsy and concluded that the victim sustained a contact gunshot wound to the head, resulting from a gun being pressed against his head.

Appellant was charged with criminal homicide, attempted homicide, and several counts of aggravated assault, robbery, and criminal conspiracy along with related charges. Appellant and Williams were tried in a joint jury trial which commenced on October 5, 2015. The Commonwealth's theory of the case was that Williams and Appellant conspired to rob and murder Crawford, as the prosecution indicated that the evidence would show that the three individuals were involved in a drug dealing enterprise and disagreed about how their profit should be distributed.

The Commonwealth presented the testimony of Jackie Brooks, who allowed Appellant to stay overnight in her home the night before the murder.[1] Brooks knew Appellant was in a relationship with a man named

_____

[1] Although the prosecution offered the testimony of numerous witnesses to support its case, we have only summarized the testimony that is relevant to Appellant's claim on appeal.

"Jamal" and indicated that Appellant has the name "Jamal" tattooed on her arm. Brooks agreed to allow Appellant to borrow her red Cadillac SUV the next morning. At approximately 10:30 a.m. on the day of the victims' murder, Appellant called Brooks and indicated that she and Williams had been shot at in Brooks's vehicle. Appellant told Brooks to report the vehicle as stolen as she and Williams had abandoned it after fleeing the scene.

Amanda Gaderon testified that she was in a relationship with Crawford at the time of the shooting. She was able to identify the ring, watch, and keys that officers found in their investigation of the fleeing SUV as belonging to Crawford. Gaderon admitted that Crawford and Williams were partners in a drug dealing business, where Crawford supplied the drugs and the two men dealt them. Gaderon indicated that Crawford paid rent for Williams and Appellant's apartment. However, after Williams and Crawford had a heated phone conversation, the men ceased all contact by February 2014.

Brian Eisenhour testified that he owned a particular rental property in Lebanon where Crawford was previously a tenant. Crawford suggested that Eisenhour rent to his cousin named "Jamal;" but Jamal and his girlfriend did not pay rent regularly. Eisenhour would seek rent from Crawford. Eventually, Eisenhour evicted Jamal and his girlfriend from the apartment for their failure to pay rent.

Detective Michael DiPalo testified that he interviewed Appellant upon her arrest. Appellant claimed on the day of the murder, she took the red SUV to pick up her son in Harrisburg. She also indicated that she picked up

two men: Anthony Johnson and his cousin, "Tank." She indicated that they went to Crawford's apartment where Crawford, Johnson, and Tank proceeded to make drugs. While Appellant waited in the SUV, Johnson and Tank left the apartment and ordered her to drive away. Appellant claimed that both men escaped without capture.

Detective DiPalo read into evidence a letter written by Appellant to an individual named Hotters. In the letter, Appellant discussed her financial troubles, indicating that "niggas…was fucking money up in a time that we needed all but for months. Shit was getting fucked up. Bonds and loyalties was being broken. It was just a hard month, February to March." N.T. Trial, 10/7/15, at 481. Appellant also admitted that she knew Williams intended to confront Crawford "about money being fucked up and the work, and he felt like he was bringing new niggas in at a time when shit was all fucked up…" N.T. Trial, 10/7/15, at 487. Moreover, Detective DiPalo indicated that he was able to retrieve from Appellant's cell phone multiple text messages sent on the night before the victim's murders between Appellant and Cannon.

Crawford testified at trial and indicated that Williams was the individual who shot him and stole his watch and ring. In addition, Crawford also asserted that both Appellant and Cannon were present at his apartment on the morning of the shooting.

Appellant testified in her own defense. She acknowledged that Williams and Crawford were partners in a drug dealing enterprise and

admitted that the men often fought over money issues related to their business. Appellant conceded that she was involved in the partnership as she would frequently drive Williams to make "drop-offs with money and drugs." N.T. Trial, 10/9/16, at 774. She recalled that she traveled to New York City with Williams and Crawford to buy kilos of cocaine and transport it back to Lebanon. Appellant indicated that she and Williams were at Crawford's home every day where the men would cook up crack cocaine, package the drugs, and divide them amongst themselves.

However, Appellant shared that she believed Williams should end the partnership with Crawford and start his own drug dealing business. Appellant explained that she felt Crawford was "flashy" and "arrogant" with his wealth, buying expensive cars and jewelry. N.T. Trial, 10/9/16, at 832. At the time of the murder, Appellant was pregnant with Williams's child, she had no car, and was living with her mother. Appellant conceded that Williams told her that Cannon, Williams's cousin, robbed drug dealers. She admitted that on the morning of the murder, she drove Williams and Cannon to Crawford's place in the early morning hours, when she had never done so before this occasion.

On rebuttal, Detective DiPalo testified and entered into evidence portions of an interview Appellant gave to police on March 21, 2014. **See** N.T. 10/12/16, at 1028-1038. On the recording, Appellant admitted that she overheard Williams and Cannon discussing a plan to rob and murder Crawford approximately one to two weeks before Crawford's death.

At the conclusion of the trial, the jury convicted Appellant of murder in the second degree and found her guilty on all the other charges. On December 2, 2015, the trial court sentenced Appellant to life imprisonment. The same day, Appellant filed a post-sentence motion, which the trial court denied on March 21, 2016. Appellant filed a timely notice of appeal and complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises one multi-faceted claim on appeal, arguing that "the Commonwealth's evidence failed to establish that Appellant acted with the required specific intent to conspire or be an accomplice in the commission of murder, aggravated assault, or robbery." Appellant's Brief, at 6. Our standard of review for a sufficiency challenge is as follows:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Rayner*, ---A.3d---, 2016 WL 7474406 (Pa. Super. filed Dec. 29, 2016).

To sustain a conviction for second-degree murder, the Commonwealth must prove beyond a reasonable doubt that the defendant committed homicide while "engaged as a principal or an accomplice in the perpetration

of a felony." 18 Pa.C.S. § 2502(b). Section 2502(d) of the Crimes Code further defines "perpetration of a felony" as "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping. 18 Pa.C.S. § 2502(d).

Appellant was charged with robbery under Section 3701(a)(1)(i) which states that a "person is guilty of robbery if, in the course of committing a theft, he … inflicts serious bodily injury upon another." 18 Pa.C.S. § 3701. In addition, Appellant was charged with aggravated assault under Sections 2702(a)(1) and (a)(4) of the Crimes Code. To sustain a conviction for aggravated assault under Section 2702(a)(1), the Commonwealth must prove beyond a reasonable doubt that the defendant "attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). To sustain a conviction for aggravated assault under Section 2702(a)(4), the Commonwealth must prove beyond a reasonable doubt that the defendant attempt[ed] to cause or intentionally or knowingly cause[d] bodily injury to another with a deadly weapon." 18 Pa.C.S. § 2702(a)(4).

Although Appellant was not the principal actor in shooting Crawford and Ortiz, the Commonwealth charged Appellant for these crimes as a co-

conspirator and an accomplice. Section 903 of the Crimes Code defines the crime of conspiracy:

> (a) **Definition of conspiracy.**– A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a)(1)–(2). This Court has provided that:

> [t]o sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by the defendant; it need only be committed by a co-conspirator.
>
> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation.

*Commonwealth v. Knox*, 50 A.3d 732, 740 (Pa.Super. 2012) (citations omitted). We emphasize that "[w]here the existence of a conspiracy is

- 9 -

established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy." ***Commonwealth v. Fisher***, 622 Pa. 366, 377, 80 A.3d 1186, 1192 (2013).

An accomplice may also be held legally accountable for the conduct of another individual involved in the commission of a crime. ***See*** 18 Pa.C.S. § 306(b)(3). The Crimes Code defines an accomplice as follows.

> A person is an accomplice of another person in the commission of an offense if:
>
>   (1) with the intent of promoting or facilitating the commission of the offense he:
>
>     (i) solicits such other person to commit it; or
>
>     (ii) aids or agrees or attempts to aid such other person in planning or committing it; or
>
>   (2) his conduct is expressly declared by law to establish his complicity.

18 Pa.C.S. § 306(c).  This Court has further explained that:

> [b]oth requirements may be established wholly by circumstantial evidence. Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice. No agreement is required, only aid.
>
> To establish complicity, mere presence at the scene of a crime and knowledge of the commission of criminal acts is not sufficient. Nor is flight from the scene of a crime, without more, enough. However, those factors combined, along with other direct or circumstantial evidence may provide a sufficient basis

- 10 -

for a conviction, provided the conviction is predicated upon more than mere suspicion or conjecture.

*Knox*, 50 A.3d at 739 (citations omitted).

In reviewing the evidence presented at trial, we find that the Commonwealth presented sufficient evidence to sustain Appellant's convictions for acting as conspirator and an accomplice to murder, robbery and aggravated assault. We find the trial court aptly stated its reasons for upholding Appellant's convictions as follows:

In reviewing this matter, taking the facts in the light most favorable to the Commonwealth as the verdict winner, it is apparent that there was sufficient evidence presented to find [Appellant] guilty of the charged crimes. As previously stated, the co-conspirator rule establishes that a co-conspirator is liable for the acts of his/her co-conspirators that are the natural and probable result of the conspired acts. A natural and probable result of a robbery, conducted with a gun, is a killing of another individual. Shooting an individual, while not killing said individual, but resulting in serious bodily injury, would similarly be a natural and probable result of a conspired robbery at gun point.

In examining the existence of the conspiracy to commit a robbery and a murder, the evidence indicates that [Appellant] overheard a discussion between [Williams] and Cannon related to robbing and murdering Crawford, which took place a week to two weeks before March 10, 2014. [Appellant] was aware that Cannon was known to rob people, especially drug dealers.

With that knowledge, [Appellant] agreed to drive [Williams] and Cannon to Crawford's apartment in the early morning hours of March 10, 2014. Evidence and testimony was presented that there were multiple calls and text messages from [Appellant's] phone to Cannon, the night before the shooting. [Appellant] further indicated that she had never taken Cannon to Crawford's apartment, this would be Cannon's first time going to Crawford's place. [Appellant] testified that when she was waiting in the SUV outside of Crawford's apartment, she heard gunshots and

- 11 -

subsequently saw [Williams] come out of the apartment carrying a paper bag.

The presented evidence is sufficient to determine that a conspiracy existed to rob and murder Crawford. From the evidence, the Jury could determine that [Appellant] knew [Williams] and Cannon were planning to rob and murder Crawford through [Appellant's] actions and comments to the police. Furthermore, [Appellant] acted in furtherance of the conspiracy with the shared intent to aid the conspiracy by driving [Williams] and Cannon to Crawford's apartment, and subsequently acting as the getaway driver of the SUV.

Additionally, as stated above, [Appellant] was charged and found guilty as an accomplice. The same facts that are sufficient in determining [Appellant's] culpability as a co-conspirator are sufficient in determining [Appellant's] culpability as an accomplice. As previously stated[,] mere presence at the scene of a crime and knowledge of the commission of criminal acts, or flight from the scene of a crime, are not sufficient in and of itself, to prove culpability as an accomplice without more evidence.

However, in the matter *sub judice*, there was additional circumstantial evidence from which the jury could determine [Appellant's] culpability as an accomplice for the charged crimes. [Appellant] was present at the scene of the crime, [Appellant] was aware that [Williams] and Cannon had previously discussed robbing and murdering Crawford, Cannon had never been to Crawford's apartment before March 10, 2014, [Appellant] knew that [Williams] always carried a black handgun with him, [Appellant] saw the shotgun in the SUV and [Appellant] was the driver of the getaway car.

T.C.O. at 13-15 (citations omitted). Accordingly, we reject Appellant's challenge to the sufficiency of the evidence as meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/15/2017</u>