J-S82011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PHILLIP L. BURNEY | : | |
| | : | |
| Appellant | : | No. 2254 EDA 2017 |

Appeal from the Judgment of Sentence June 12, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009549-2016

BEFORE: LAZARUS, J., OLSON, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.: **FILED JANUARY 15, 2019**

Phillip Burney appeals from his judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his conviction on two counts each of criminal conspiracy[1] (robbery), theft by unlawful taking,[2] and theft by receiving stolen property.[3] Upon careful review, we affirm.

The trial court set forth the facts of this case as follows:

> [Claire] Gothreau testified that on August 14, 2016 at approximately 1:00 a.m., she and her friend, Lauren Rowlands, were walking on 18th Street south of Fairmount Avenue in Philadelphia, when a male grabbed her shoulder from behind and spun her around. The male was pointing a long, silver handgun at her chest and told her to give him her purse; she complied. The male then turned the gun on her friend, and demanded her

---

[1] 18 Pa.C.S. § 903.

[2] 18 Pa.C.S. § 3921.

[3] 18 Pa.C.S. § 3925.

---

* Retired Senior Judge assigned to the Superior Court.

purse; she complied as well. The male turned the gun back on Ms. Gothreau, and asked for her phone. She told him that it was in her purse. The male then turned, ran to a large white SUV and drove away. She described her attacker as an African-American male, five-foot eleven-inches tall, 170 pounds, wearing a white tank top and shorts. In total, the male took her iPhone and purse, which contained her wallet, two credit cards, makeup and keys.

Immediately after the robbery, a "good Samaritan" approached them and asked if they needed help; they said yes. He called the police on his phone and handed it to Ms. Gothreau, who explained what just happened and provided descriptive information. Within two minutes, a police car came down 18th Street, picked them up, and transported them to a CVS parking lot approximately five blocks away on Fairmount Avenue. There, she observed two males, one of whom she positively identified as the male who had just robbed her. She then saw police retrieve her and her friend's belongings from the back of the SUV; they positively identified their belongings, which were inventoried at the police station before being returned to them. Ms. Gothreau testified that the entire episode, from the holdup to her positive identifications, occurred within a very short time span -- no more than five to ten minutes.

The Commonwealth next called complainant Lauren Rowlands to the stand. Ms. Rowlands testified that, on August 14, 2016 at approximately 12:45 a.m., she and Clair Gothreau were walking home on 18th Street south of Fairmount Avenue when a man approached Ms. Gothreau from behind and stood in between the two women. She saw Ms. Gothreau hand over her yellow purse, and at that point she realized that they were being robbed. Ms. Rowlands reached for her phone, but the male pointed the gun at her abdomen and demanded her phone and purse; she promptly complied. Her purse contained $85 in cash, a debit card, American Express card, an ID, makeup, ear buds and house keys. The male turned back to Ms. Gothreau to make sure he had her phone as well. He then ran away, at which point she saw a gentleman approaching them to render assistance. They used his phone to call police, and described what happened "in very vivid detail". Within minutes, a police SUV came barreling down the street and the officer asked them to get in the back. He drove them to a CVS a few blocks away on Fairmount Avenue, where she identified the gunman "easily and quickly." Her belongings

- 2 -

were present at that location and "everything but [her] lip gloss" was returned to her.

The Commonwealth next presented the testimony of Philadelphia Police Officer Rasheen Dickerson. Officer Dickerson testified that, on August 14, 2016, he and his partner, Officer Holden, were working in plain clothes in an unmarked vehicle in the Fairmount section of Philadelphia. At approximately 12:45 a.m., they were traveling eastbound on Fairmount Avenue, stopped at a traffic light at the 24th Street intersection when they observed a black male, later identified as Jeremiah Byrd, running westbound toward them on Fairmount. When he got to the corner, the male placed something in the bushes and then immediately ran back eastbound on Fairmount Avenue. The officers pursued him slowly in their unmarked vehicle until he reached a CVS parking lot in the middle of the block. There, Officer Dickerson saw the male enter the driver's seat of an SUV and observed a second male, Appellant [Burney], sitting in the passenger seat.

Officer Dickerson instructed his partner to quickly drive back to the corner so that he could see what was in the bushes. He observed two cell phones with "feminine" cases -- one was pink and the other had red hearts. At that point he told his partner, "[L]et's go have a conversation with those two guys." As they were returning to the CVS lot, police radio broadcast a call of gunpoint robbery in progress on the 1700 block of North Street. Officer Dickerson observed that the first male -- later identified as Jeremiah Byrd -- matched the flash description from the robbery call. Officer Dickerson exited the vehicle and approached the passenger side of the SUV, while his partner drove to the other side to "block it in." Officer Dickerson instructed the males not to move. Mr. Byrd nonetheless exited the driver's seat and came running around to the passenger side of the vehicle, at which time [Burney] climbed over to the driver's seat and fled the vehicle. Mr. Byrd was detained by Officer Holden and [Burney] was [apprehended] by Officer Dickerson.

Officer Dickerson testified that he peered in the SUV and saw, in plain view, a silver handgun on the passenger side floor where [Burney] was sitting. He also saw, in plain view, a pocketbook and a purse/clutch on the back seat. The items were recovered under property receipt. Two females then arrived at the scene and they each identified Mr. Byrd as the man who robbed them with a gun. They also identified the two phones, the pocketbook

and the clutch as theirs.  At that point, the officers arrested Mr. Byrd.  Because [Burney] was about to be transported to the station for investigation, Officer Dickerson performed a search incident to transport.  [Burney's] right front pocket contained $118 in cash, and both a debit card and a credit card "with complainant's name on it.

Trial Court Opinion, 1/19/18, at 2-5 (citations and footnotes omitted).

Following a bench trial, the court convicted Burney of conspiracy (robbery), theft by unlawful taking and theft by receiving stolen property.  On June 12, 2017, Burney was sentenced to an aggregate term of 1½-3 years' incarceration, followed by a five-year probationary period.  Burney filed post-sentence motions, which were denied.  Burney filed a timely notice of appeal and a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Burney raises the following issues for our review:[4]

1) Whether the trial court [erred] in entering verdicts of guilty against [Burney] because the evidence at trial was insufficient to support a conviction.

2) Whether the verdict of guilty was against the weight of the evidence at trial.

Brief of Appellant, at 4.

---

[4] Even though Burney's brief does not attempt to apply law to the facts, making it difficult to conduct appellate review, we decline to dismiss because of the comprehensive Rule 1925(a) Opinion authored by the Honorable Susan I. Schulman.

Burney first claims the evidence was insufficient to convict him of conspiracy to commit robbery. He argues the evidence only shows possession of stolen property, but does not show the existence of an agreement. He is entitled to no relief.

"In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013).

To convict a defendant of conspiracy, the trier of fact must find the following:

> (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant[,] or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime.

*Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. 2004).

An explicit or formal agreement to commit a crime can rarely be proved. However, direct evidence is unnecessary because "proof of criminal partnership is almost invariably extracted from the circumstances that attend its activities." *Commonwealth v. Knox*, 50 A.3d 732, 740 (Pa. Super. 2012).

As the trial court noted, there is no direct evidence that Burney committed the robbery. However, there was sufficient circumstantial evidence to establish a common understanding to commit the robbery. During the

robbery, officers observed Byrd stash the phones and return to the vehicle where Burney was sitting in the passenger seat with a silver gun at his feet. When Burney was apprehended trying to flee the officers, he was caught "red-handed in possession of the fruits of the robbery, namely, cash and credit/debit cards taken from the victims." Trial Court Opinion 1/19/18, at 9. All this occurred within minutes of the robbery and in the same location as the robbery. Burney was in the getaway vehicle, in possession of the complainant's stolen property, with the gun used in the robbery at his feet, and with the man identified as the robber. When officers approached, he fled.

Viewed in the light most favorable to the Commonwealth, there is ample evidence to establish that there was an agreement to enter into a robbery. Contrary to Burney's statement that there is "no evidence [Burney] agreed to rob someone," there is sufficient circumstantial evidence for the fact finder to find a conspiracy.

Burney also claims that the verdict was against the weight of the evidence.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly

exercised and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

Here, the trial court found the Commonwealth's witnesses credible. The only issue was whether Burney actually possessed stolen property. Judge Schulman, acting as the finder of fact, reasonably found Burney was in possession of the stolen property. Judge Schulman found Burney failed to show how the result "shocks one's sense of justice." Trial Court Opinion, 1/19/18, at 12. Based on our review of the record, we can discern no abuse of discretion in the court's conclusion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/15/19