J-A18024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:        PENNSYLVANIA
:
v.  :
:
:
:
MICHAEL JASON PENDLETON  :
:
Appellant  :  No. 958 WDA 2018

Appeal from the Judgment of Sentence Entered April 11, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008053-1997,
CP-02-CR-0008064-1997

BEFORE:  BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                **FILED SEPTEMBER 19, 2019**

Appellant Michael Jason Pendleton appeals from the judgment of sentence imposed after the trial court resentenced him to a term of twenty-eight years to life imprisonment for one count of second-degree murder.[1] Appellant challenges the discretionary aspects of his sentence and claims his sentence is illegal because the trial court lacked subject-matter jurisdiction. We affirm.

The trial court summarized the relevant facts of this case as follows:

Police Officer Christine Williams, of the City of Pittsburgh Police Department, testified that at approximately 1:00 p.m. on the afternoon of June [12], 1997, she received a radio call to investigate a shooting in a vehicle on the northside of the city. Upon arriving at the scene, Officer Williams observed a black male slumped over the steering wheel of an Oldsmobile Achieva with a gunshot wound to the back of his neck. The victim, who was

_____

[1] 18 Pa.C.S. § 2502(b).

identified by his son as Kenneth Wright, was disabled and worked as a jitney driver.

After a police investigation, three young men were questioned about the shooting. After being advised of his constitutional rights in the presence of his father, [Appellant], who was fourteen years of age at the time, gave the police the following statement on the day after the incident:

[Appellant] and Arthur Dunn[, who was 15 at the time of the offense], were at the home of Julian Boyer. While there, they developed a plan to rob "the weed man," who sold marijuana on a street nearby. The plan was that [Appellant] and Dunn would commit the actual robbery and Boyer would supply the guns. Boyer called a jitney to pick up the two young men after the planned robbery. [Appellant] and Dunn left the house. [Appellant] had a sawed-off shotgun and Dunn had a .32 caliber pistol. They went to the home of "the weed man," but were unable to rob him because he did not have any "weed" and there were too many people there.

They then decided to rob the jitney driver. They left the "weed man's" house and went to the location where the jitney driver was to pick them up. [Appellant] got into the front seat of the vehicle and Dunn got into the back behind the driver. As they were driving, Dunn told the driver to stop and "give me your money." The victim replied, "Yeah, right." Both defendants drew their weapons and pointed them at the driver. [Appellant] cocked the sawed-off shotgun. The gun discharged striking Mr. Wright in the back of the neck. [Appellant] steered the vehicle down the street and stopped it in front of Boyer's house. Both men jumped out of the car and ran down the city steps next to Boyer's house.

Trial Ct. Op., 12/20/18, at 4 (record citations omitted).

In docket number 8053-1997, the Commonwealth filed a criminal information charging Appellant with criminal homicide. In docket number 8064-1997, the Commonwealth filed a criminal information charging Appellant with robbery, criminal conspiracy, and a violation of the Uniform Firearms Act.

All charges were presented in the same jury trial.[2]  On March 25, 1999, the jury convicted Appellant of second-degree murder and related offenses.  On May 4, 1999, the trial court sentenced Appellant to a mandatory term of life imprisonment without the possibility of parole.

Between 2005 and 2016, Appellant filed numerous *pro se* and counseled petitions pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  In February 2016, Appellant submitted a *pro se* filing styled as an "application for an immediate/emergency hearing" pursuant to **Miller v. Alabama**, 567 U.S. 460 (2012), and **Montgomery v. Louisiana**, 136 S. Ct. 718 (2016).  The PCRA court treated the filing as a PCRA petition and appointed counsel.  Appellant declined appointed counsel's services and retained private counsel.

_____

[2] A review of the record indicates the dockets were not formally consolidated but the matters were tried together before the trial court with the same jury.

Pennsylvania Rule of Criminal Procedure 582 (A)(1), formerly Rule 1127(A)(1), provides as follows:

> (1) Offenses charged in separate indictments or informations may be tried together if:
>
> > (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
>
> > (b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1).

Ultimately, Appellant's counsel entered their appearance on November 1, 2017, for the exclusive purpose of resentencing. On November 8, 2017, the PCRA court granted relief and scheduled a resentencing hearing. Both parties submitted sentencing memorandums.

On April 11, 2018, the trial court conducted Appellant's resentencing hearing. At the beginning of the hearing, the trial court asked the parties if they had reviewed the pre-sentence report and if the report needed correction. Appellant's counsel indicated a discrepancy between the facts presented in the report and Appellant's version of the facts. The trial court noted that Appellant did not agree with facts in the report.

Thereafter, Appellant presented evidence regarding the circumstances of the offense, his behavior while incarcerated, and his potential for rehabilitation. Appellant's evidence included an expert report and testimony from Laura Hinds, a clinical social worker and psychotherapist. As an expert in the effects of juvenile trauma, Ms. Hinds testified:

> My opinion was that [Appellant]'s initial upbringing and childhood was characterized by psychological, verbal, sexual abuse, that he was not offered the nurturing, supportive, prosocial modelling [sic] of adults in his environment. That he had limited scope and future orientation for his future.
>
> That those things changed when he was incarcerated. That he was able to adopt more prosocial behavior during the course of his incarceration that had been consistent over the past ten-plus years. That [Appellant] has demonstrated significant maturation in comparison to where he was at as a 14-year-old.

N.T., 4/11/18, at 66-67.

Appellant also made a statement and apologized for his role in the victim's death. The Commonwealth presented victim impact statements from members of the victim's family.

After hearing the parties' evidence and arguments, the trial court stated that it reviewed the sentencing memorandums, the entire record from the 1999 trial, and a 1999 report prepared by Dr. Rosenblum,[3] a clinical psychologist. After outlining the *Miller* factors,[4] the trial court provided the following on-the-record statement of reasons for its sentencing decision:

> Now, the age, at the time you were [fourteen and a half]. The biggest trouble I have with this case is simply this. There's all these factors that are brought up, and I think the one thing that sticks out to me the most is the family life . . . . And even your grandmother testified that she doesn't remember people being locked in a room and fighting.

---

[3] Dr. Rosenblum's first name is not in the certified record.

[4] In *Commonwealth v. Knox*, 50 A.3d 732 (Pa. Super. 2012), this Court described the "*Miller* factors" as follows:

> [A]lthough *Miller* did not delineate specifically what factors a sentencing court must consider, at a minimum it should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home, and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

*Knox*, 50 A.3d at 745 (citation omitted).

The sexual abuse, now, there is an argument that maybe people didn't want to bring this out . . . . But I've dealt with two lifers before I've resentenced, and I've dealt with several people that I've sentenced to life. The fact that there's absolutely no mention of any sexual abuse at any time before this until you meet with the investigators makes me think I got to be skeptical about this.

And this obsession with filing constantly with[,] I counted[,] over 175 pleadings on your own about this.

*    *    *

And I was troubled by the 1999 presentence report. Dr. Rosenblum is a clinical psychologist who I'm familiar with. He argued -- he stated that "[Appellant] has never resolved the tragic death of his mother, and he appeared to be acting out in a violent manner in an effort to retaliate against others and symbolically revenge her death." I understand that.

But Dr. Rosenblum goes on to say, "He also appeared to be desensitized toward violence and had little regard for the needs or feelings of others. [Appellant] does not appear to be troubled by a conscience and has little remorse for the pain or hurt which he has caused others. [Appellant] sees life as a cold, rejecting place, which has never been kind or pleasant to him," which is pretty strong from Dr. Rosenblum.

I then look at the 2017 presentence report that was completed [on] August 23rd of that year. During the interview, "[Appellant] stated that he is not guilty of what happened to the victim."

*    *    *

To me you've been in the law library, and that's primarily what you do. It almost appears to me that some of this is you went in and looked at the factors and read the case law and "I got to beef this up so I can get out of here." But there was never any remorse ever shown until today.

There was never any accepting of responsibility where you said, "I was involved, and this is my fault, and I sincerely apologize for what I did." And I have had two other lifers before you that had been in much longer than you have. And you could see legitimate change in them, and you could see that they accepted the fact that what they did was wrong, and they made efforts to turn their life around.

- 6 -

I see someone who's just going to constantly harass the legal system and from now until the end of time with all these filings.

*Id.* at 182-86.

At the conclusion of the hearing, the trial court resentenced Appellant to twenty-eight years to life for second-degree murder, with a concurrent term of ten to twenty years' imprisonment for criminal conspiracy.

On April 16, 2018, Appellant timely requested an extension of time to file post-sentence motions. The trial court granted the extension until May 23, 2018. Appellant subsequently filed a timely post-sentence motion, claiming that his sentence was excessive and arbitrary, the trial court considered impermissible factors, and the trial court failed to afford proper weight to the evidence presented. On June 4, 2018, the trial court denied the motion.

On July 3, 2018, Appellant timely filed a notice of appeal. Appellant filed a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed a responsive Rule 1925(a) opinion.

Appellant now raises three issues for our review:

1. Whether the [trial] court abused its discretion in not imposing a shorter term of years at the minimum end of [Appellant]'s sentence range where it misconstrued certain sentencing factors, considered impermissible factors, improperly rejected mitigating evidence, improperly weighted other evidence, and imposed a sentence that was manifestly unreasonable and the result of partiality, prejudice, and bias.

2. Whether the [trial] court abused its discretion by failing to provide [Appellant] a meaningful opportunity to inspect the Pre-Sentence Report.

3. Whether the [trial] court imposed an illegal sentence because it lacked subject-matter jurisdiction to sentence [Appellant] where [Appellant] was convicted of second-degree murder under [18 Pa.C.S. § 2502(b)], but he was only charged with criminal homicide under [18 Pa.C.S. § 2501].

Appellant's Brief at 3.

In his first issue, Appellant challenges the discretionary aspects of his sentence. *Id.* at 16. He claims that the trial court misapplied certain sentencing factors, considered impermissible factors, and improperly weighed mitigation evidence resulting in a manifestly unreasonable sentence. *Id.* at 13. Appellant presents several arguments in support, and we summarize them as follows.

Initially, Appellant argues that the trial court "misconstrued the nature and circumstances of [his] offense and the degree of his culpability by implying that [he] was the triggerman." *Id.* at 21. He also contends that the trial court "glossed over the importance of [his] age as an independent mitigating factor." *Id.* at 22. Appellant asserts that the trial court improperly relied on the Commonwealth's arguments that he shot and killed the victim, even though the jury did not specifically find him to be the shooter and the trial record did not support such a finding. *Id.* at 23. Appellant insists that the trial court further erred by requiring him to demonstrate remorse by accepting responsibility for pulling the trigger. *Id.* at 22.

Next, Appellant argues that the trial court did not properly consider his age because the trial court only briefly addressed it during the resentencing

hearing. ***Id.*** at 26. Appellant contends that the trial court should have considered his age separately from the hallmark features of youth. ***Id.***

Relatedly, Appellant argues that the sentence imposed is "grossly inconsistent and disproportionate to similarly-situated juveniles," making it "manifestly unreasonable." ***Id.*** at 14. Appellant asserts his sentence stands in "stark contrast to the judiciary's goal of promoting uniformity and certainty." ***Id.*** at 40. Appellant contends he should have been sentenced to a minimum term of twenty years, because four out of five defendants who were fourteen at the time of their offenses received a minimum sentence of twenty years upon resentencing under ***Miller***. ***Id.*** at 41. Appellant refers to the fact that his sentence is eight years in excess of the statutory minimum while his co-defendant, Mr. Dunn, received a sentence that is two years below the statutory minimum for the same offense.[5] ***Id.***

_____

[5] Mr. Dunn was sentenced to a mandatory term of life without parole in 1999, which was, upon resentencing, reduced to a minimum term of twenty-eight years' imprisonment on January 30, 2018.

Section 1102.1 of the Crimes Code provides that a person fourteen years of age or younger is subject to a minimum sentence of twenty years' imprisonment. ***See*** 18 Pa.C.S. § 1102.1(c)(2). A person who is fifteen years of age or older is subject to a minimum sentence of thirty years to life imprisonment. ***See*** 18 Pa.C.S. § 1102.1(c)(1). Section 1102.1 does not directly apply to persons who committed crimes before June 24, 2012, the date of the ***Miller*** decision. However, the Pennsylvania Supreme Court has indicated that the minimum sentences in Section 1102.1 provides "legislative guidance" that "will 'help frame the exercise of judgment by the court in imposing a sentence' and 'may provide an essential starting point . . . that must be respected and considered' when determining the appropriate minimum sentence for a juvenile convicted of first-degree murder prior to the

Additionally, Appellant argues the trial court improperly relied on his *pro se* filings as an impermissible aggravating factor. *Id.* at 27. Appellant asserts that his *pro se* filings and assertions of innocence are an exercise of his constitutional rights that should not provide a basis for a harsher punishment. *Id.* at 28. Appellant contends the trial court's emphasis in this area "disregards the relevant factors under the sentencing guidelines and *Miller*." *Id.* at 30.

Appellant also maintains the trial court "improperly rejected credible and unrefuted [mitigation] evidence regarding [Appellant]'s chaotic and abusive upbringing." *Id.* at 32. Appellant claims the trial court exhibited partiality and bias when it disregarded the expert testimony of Ms. Hinds and accorded disproportionate weight to the 1999 evaluation prepared by Dr. Rosenblum. *Id.* at 38-39.

It is well settled that "[c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citation omitted). Rather, before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a concise

*Miller* decision." *Commonwealth v. Batts*, 163 A.3d 410, 458 (Pa. 2017) (*Batts II*) (citation omitted). The *Batts II* Court, however, cautioned that that its "instruction to seek guidance from the statute is not intended to intrude upon a sentencing court's discretion to determine an appropriate, individualized sentence for a given offender . . . ." *Id.* at 457-58 (citations omitted).

statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

***Commonwealth v. Corley***, 31 A.3d 293, 296 (Pa. Super. 2011) (citation omitted). A substantial question is presented "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Sierra***, 752 A.2d 910, 913 (Pa. Super. 2000) (citation omitted).

Instantly, Appellant preserved his issue in a post-sentence motion and timely appealed from the denial of his post-sentence motion. Appellant also included in his brief a Pa.R.A.P. 2119(f) statement. Further, Appellant's arguments in support of his first issue raise a substantial question for our review. ***See Commonwealth v. Zeigler***, 112 A.3d 656, 662 (Pa. Super. 2015) (stating "an excessiveness claim in conjunction with an assertion that the court did not adequately consider a mitigating factor may present a substantial question." (citation omitted)); ***Commonwealth v. Macias***, 968 A.2d 773, 776 (Pa. Super. 2009) (holding, "an allegation that the court considered an impermissible sentencing factor raises a substantial question" (citation omitted)). We therefore address the merits.

Our standard of review in this context is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal

absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

In ***Miller***, the United States Supreme Court held that a sentence of mandatory life without parole for juvenile offenders violates the Eighth Amendment to the United States Constitution:

Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features— among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.

***Miller***, 567 U.S. at 477-78 (citations omitted). In ***Montgomery***, the United States Supreme Court held that ***Miller***'s prohibition on mandatory life imprisonment must be applied retroactively by the states. ***See Montgomery***, 136 S. Ct. at 731-32.

Subsequently, the Pennsylvania Supreme Court instructed, "in sentencing juveniles facing life without the possibility of parole, courts should

examine both the **Miller** factors and the [S]ection 1102.1(d) factors . . . regardless of whether the juvenile was convicted pre- or post-**Miller**." **Batts II**, 163 A.3d at 455 n.23. Our Supreme Court has recently revisited this issue, holding that "[t]rial courts must consider, on the record, the **Miller** factors and Section 1102.1 criteria, in all cases where a juvenile is exposed to a sentence of life without parole." **Commonwealth v. Machicote**, 206 A.3d 1110, 1120 (Pa. 2019).

The factors found in 18 Pa.C.S. § 1102.1(d) are similar to those articulated in **Miller**.

> **§ 1102.1. Sentence of persons under the age of 18 for murder, murder of an unborn child and murder of a law enforcement officer**
>
> \* \* \*
>
> **(d) Findings.**—In determining whether to impose a sentence of life without parole under subsection (a), the court shall consider and make findings on the record regarding the following:
>
> (1) The impact of the offense on each victim. . . .
>
> (2) The impact of the offense on the community.
>
> (3) The threat to the safety of the public or any individual posed by the defendant.
>
> (4) The nature and circumstances of the offense committed by the defendant.
>
> (5) The degree of the defendant's culpability.
>
> (6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.
>
> (7) Age-related characteristics of the defendant, including:
>
> > (i) Age.

(ii) Mental capacity.

(iii) Maturity.

(iv) The degree of criminal sophistication exhibited by the defendant.

(v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.

(vi) Probation or institutional reports.

(vii) Other relevant factors.

18 Pa.C.S. § 1102.1(d).

Additionally, the trial court may consider a defendant's lack of remorse in fashioning a sentence. *Commonwealth v. Begley*, 780 A.2d 605, 644 (Pa. 2001) (citation omitted). "Where the [trial] court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of relevant information regarding the [Appellant]'s character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa. Super. 2013) (citation and quotation marks omitted).

Instantly, the trial court applied the *Miller* factors as part of its on-the-record statement of reasons for the sentence it imposed. *See* N.T. at 182. Specifically, the trial court did consider the nature and circumstances of the offense. *See* 18 Pa.C.S. § 1102.1(d)(4); *Miller*, 567 U.S. at 477-78.

To the extent Appellant argues that the trial court misunderstood his role in the offense, the record belies Appellant's assertion. Although the Commonwealth advanced an argument that Appellant was the "triggerman,"

neither the record nor the trial court's opinion suggest the court found it persuasive. Regarding Appellant's culpability, the trial court explained:

> The record does not support a finding that [Appellant]'s participation in the offense was the result of unfortunate or unforeseen circumstances that placed him in the wrong place at the wrong time; that he acted in self[-]defense; or, that he was the subject of coercion in participating in the crime.

Trial Ct. Op. at 20.

> As to Appellant's age serving as a mitigating factor, the trial court noted:

> In reviewing the record as a whole, there is little that supports a finding that [Appellant]'s involvement in the murder of Mr. Wright was the result of immaturity, impetuous and impulsive behavior or a failure to appreciate risks and consequences. In fact, the record reflects that prior to the murder, [Appellant] had an extensive history of participation in criminal conduct and activity that was not the result of any diminished capacity or incompetence, duress, lack of educational opportunities or lack of opportunities for reform. . . . The record also reflects that [Appellant] was mature enough to fully appreciate the risks and consequences of his actions.

*Id.* at 16. On this record, the trial court adequately considered Appellant's age and its hallmark features. *See Batts II*, 163 A.3d at 431.

Contrary to Appellant's argument, the trial court did not impose a harsher sentence due to Appellant's numerous *pro se* filings. Instead, the trial court properly considered Appellant's lack of remorse as demonstrated by his repeated assertions of innocence in the *pro se* filings. *See* 18 Pa.C.S. § 1102.1(d)(7)(vii). Comparing Appellant's filings to his on-the-record statement to the victim's family, the trial court pointed out "there was never any remorse ever shown until today." N.T. at 185. The trial court further

noted that "[a] review of [Appellant]'s pleadings over the years document[s] his claims of having participated in the crime under 'duress' as well as his 'actual innocence.'" Trial Ct. Op. at 19.

Although Appellant alleges that the trial court failed to consider his background and improperly weighed other mitigation evidence, the trial court reviewed and relied upon multiple pre-sentence reports. Specifically, the trial court noted Ms. Hinds' expert report and testimony that indicated Appellant experienced abuse in his childhood. N.T. at 182. However, the court considered the claims of abuse in light of Appellant's previous denials of abuse and witness testimony to the contrary. *Id.* The trial court noted that "as late as 2013 [Appellant] explicitly denied any history of any abuse and indicated that his needs as a child were met." Trial Ct. Op. at 17. Accordingly, the court is presumed to have considered all relevant factors. *See Griffin*, 65 A.3d at 937.

Finally, Appellant's argument that his sentence is grossly inconsistent with that of similarly situated individuals is unpersuasive. Because the trial court's on-the-record statement sets forth an adequate consideration of all relevant factors, we discern no abuse of discretion. *See Raven*, 97 A.3d at 1253; *see also Batts II*, 163 A.3d at 455 n.3, 457-58.

In his second issue, Appellant argues that the trial court abused its discretion by failing to provide him with a meaningful opportunity to review the pre-sentence report. Appellant's Brief at 44. Appellant contends that he received a copy of the pre-sentence report "only minutes prior to the

resentencing hearing." *Id.* at 45. Appellant concludes "the failure to provide sufficient time for counsel to review the [r]eport and evaluate the context of the statements relied upon by the [trial] court . . . constitutes an abuse of discretion." *Id.*

Appellant purports to challenge the discretionary aspects of his sentence, and we must again determine if this issue is properly before this Court. *See Corley*, 31 A.3d at 296. Here, Appellant preserved his issue in a post-sentence motion, timely appealed, and including a Rule 2119(f) statement in his brief. Nevertheless, Appellant fails to cite any relevant legal authority to support his claim that this issue presents a substantial question. *See* Appellant's Brief at 16-17.

Moreover, even if this issue presented a substantial question, the record belies Appellant's argument. At the beginning of the hearing, the following exchange occurred:

THE COURT: Okay. Counsel, did you review the presentence report with your client?

[Appellant's Counsel]: We did.

THE COURT: Were there any additions or corrections to it that you wanted to make?

[Appellant's Counsel]: The only correction, if you can call it that, that I would want to make is just to clarify that the presentation of the facts from the underlying case demonstrate the disparities in some of the evidence.

THE COURT: What are you referring to?

[Appellant's Counsel]: So in terms of exactly what happened at [Appellant]'s trial and who testified and who said what, there was

- 17 -

a lot of he said/he said. And the version of facts in the [PSI] gives a version of facts, but there were certain things left out.

THE COURT: Your client doesn't agree with that version?

[Appellant's Counsel]: That's right.

N.T. at 4-5. Contrary to his argument on appeal, Appellant had the opportunity to review the pre-sentence report with counsel and inform the trial court of certain discrepancies. On this record, Appellant is not entitled to relief on his second issue.

In his third issue, Appellant argues his sentence is illegal because the trial court lacked subject-matter jurisdiction to sentence him for second-degree murder. Appellant's Brief at 46. Appellant alleges he did not have notice that he could be convicted of second-degree murder because the criminal information containing the homicide charge was separate from the information charging him with the underlying felony. *Id.* at 49. Appellant also contends the criminal "[i]nformation failed to plainly state that [Appellant] could be convicted on the basis of accomplice liability." *Id.* at 50. Appellant insists "the lack of notice precluded [him] from anticipating the prosecution's proof." *Id.* at 51. Appellant concludes the trial court lacked subject-matter jurisdiction to sentence him because he was never placed on "formal notice of the specific crime for which he was convicted." *Id.* at 52.

A challenge to subject-matter jurisdiction presents a question of law, so our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Seiders*, 11 A.3d 495, 496-97 (Pa. Super. 2010). "An

objection to lack of subject matter jurisdiction can never be waived . . . ."

*Commonwealth v. Little*, 314 A.2d 270, 272 (Pa. 1974) (citations omitted).

The Pennsylvania Supreme Court has considered that there are

two requirements for subject-matter jurisdiction as it relates to criminal defendants: the competency of the court to hear the case, and the provision of formal notice to the defendant of the crimes charged in compliance with the Sixth Amendment of the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution.

*Commonwealth v. Jones*, 929 A.2d 205, 210 (Pa. 2007) (citing *Little*, 314

A.2d at 272-73).

"Controversies stemming from violations of the Crimes Code are

entrusted to the original jurisdiction of the courts of common pleas for

resolution." *Seiders*, 11 A.3d at 497 (citation omitted).

The purpose of an Information or an Indictment is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act. An Indictment or an Information is sufficient if it sets forth the elements of the offense intended to be charged with sufficient detail that the defendant is apprised of what he must be prepared to meet, and may plead double jeopardy in a future prosecution based on the same set of events. This may be accomplished through use of the words of the statute itself as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.

*Commonwealth v. Chambers*, 852 A.2d 1197, 1199 (Pa. Super. 2004)

(citations and quotation marks omitted).  Further, "[a]n information need not

specify a degree of murder or the degrees of manslaughter to sustain the

verdict of second degree murder." *Id.* (citation and footnote omitted).

- 19 -

As discussed herein, the Commonwealth charged Appellant with two criminal informations at separate docket numbers. In docket number 8053-1997, the Commonwealth charged Appellant with criminal homicide. In docket number 8064-1997, the Commonwealth charged Appellant with the related offenses of robbery, conspiracy, and a firearms violation. The Commonwealth presented all charges from the two dockets in a single trial.

The information filed under docket 8053-1997 charged Appellant with criminal homicide pursuant to Section 2501 of the Crimes Code, which was sufficient to put Appellant on notice that he could be convicted of second-degree murder. *See id.* To the extent Appellant argues that he did not have notice of the possibility of conviction on a theory of accomplice liability, the possibility arises out of the homicide statute and need not be specifically written for the information to be sufficient. *See id.*

Additionally, the information filed under 8064-1997 charged Appellant with robbery and conspiracy, which provided notice of all related charges filed against Appellant. Appellant knew of the allegation that he agreed with another person to commit a robbery and that a person was killed in the commission of that robbery. Because Appellant had sufficient notice of the offenses charged and the events giving rise to those charges, subject-matter jurisdiction was proper. *See Seiders*, 11 A.3d at 497; *Chambers*, 852 A.2d at 1199.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/19/2019